UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREEDOM WATCH,
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006

                                        Plaintiff,

v.

NATIONAL SECURITY AGENCY,
FOIA Contact, FOIA Requester Service Center
9800 Savage Road Suite 6248
Fort George G. Meade, MD 20755-6248,

                                        Defendant,

CENTRAL INTELLIGENCE AGENCY,
Information and Privacy Coordinator
Washington, DC 20505

                                        Defendant,

DEPARTMENT OF DEFENSE,
Office of the Secretary and Joint Staff
OSD/JS FOIA Requester Service Center
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155,

                                        Defendant.

## COMPLAINT

Plaintiff Freedom Watch, Inc. brings this action against Defendant National Security

Agency, Defendant Central Intelligence Agency, and Defendant Office of the Secretary and Joint

Staff, to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). As

grounds therefor, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

3.      Plaintiff Freedom Watch is a 501(c)(3), non-profit, public interest foundation organized under the laws of the District of Columbia and having its principal place of business at 2020 Pennsylvania Ave., NW Suite 345, Washington, DC, 20006.  Plaintiff seeks to promote openness within the federal government and their actions. Plaintiff regularly requests records under the FOIA to shed light on the operations of the federal government and to educate the public about these operations. Plaintiff then analyzes the agency records and disseminates the results of its analysis to the public.

4.      Defendants are agencies of the United States Government. Defendants have possession, custody, and control of records to which Plaintiff seeks access.

## STATEMENT OF FACTS

5.      On July 21, 2014, Plaintiff sent a FOIA request to the Defendants by certified mail, seeking the production of agency records relating to the shoot-down of Extortion 17, carrying in it thirty U.S. military servicemen who died on August 6, 2011. Plaintiff also requested information pertaining to a congressional hearing that took place February 27, 2014 in addition to specifically asking for records about Larry Klayman, Chairman and General Counsel of Plaintiff, Freedom Watch, Inc.

6.      Defendant was required to determine whether to comply with Plaintiff's request within 20 days, excepting Saturdays, Sundays, and legal public holidays, pursuant to 5 U.S.C. §

552(a)(6)(A). Pursuant to this same provision, Defendants also were required to notify Plaintiff immediately of the determination, the reasons therefor, and the right to appeal any adverse determination to the head of the agency. Excluding weekends, and since there were no legal public holidays within the timeframe, Defendants were required to make its determination and provide Plaintiff with the requisite notifications by August 19, 2014.

7.      As of the date of this Complaint, the Defendants have failed to make bona fide, good faith determinations about whether they will comply with Plaintiff's requests. Nor have Defendants produced any records responsive to the request, indicated when any responsive records will be produced, or demonstrated that specific responsive records are exempt from production. The attached FOIA requests and Plaintiff's response to Defendants' failure to produce records, failure to say when any such records will be produced, and failure to grant expedited treatment and fee waivers demonstrate, any administrative appeal would be futile and thus the complaint is being filed upon notification to the agencies. *See Singh v. Ashcroft*, 362 F.3d 1164, 1169 (9th Cir. 2004) (A plaintiff need not "exhaust administrative remedies that would be futile" to exhaust.). *See also Sokha Sun v. Ashcroft*, 370 F.3d 932, 943 (9th Cir. 2004) ("where the agency's position on the question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be, such recourse would be futile and is not required.").

## COUNT 1
### (Violation of FOIA, 5 U.S.C. § 552)

8.      Plaintiff realleges paragraphs 1 through 9 as if fully stated herein.

9.      Defendants are unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. § 552.

10.     Plaintiff is being irreparably harmed by reason of Defendants' unlawful withholding of requested records, and Plaintiff will continue to be irreparably harmed unless Defendants are compelled to conform its conduct to the requirements of the law.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) order Defendants to conduct a search for any and all responsive records to Plaintiff's FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA request; (2) order Defendants to produce, by a certain date, any and all non-exempt records responsive to Plaintiff's FOIA request and a *Vaughn* index of any responsive records withheld under claim of exception; (3) enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA request; (4) grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and (5) grant Plaintiff such other relief as the Court deems just and proper.

Dated: August 21, 2014

Respectfully submitted,

Larry Klayman, Esq.
General Counsel
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Ave.
Suite 345
Washington, DC 20006
(310) 595-0800
leklayman@gmail.com

# Exhibit 1



# FREEDOM WATCH

► www.FreedomWatchUSA.org

► **World Headquarters** 2020 Pennsylvania Avenue, N.W., Suite 345, Washington, DC 20006-1811   ► (310) 595-0800   ► leklayman@gmail.com

July 21, 2014

***VIA CERTIFIED MAIL, FASCIMILE. RETURN RECEIPT REQUESTED.***

**Department of Defense**
**National Security Agency**
FOIA Contact, FOIA Requester Service Center/DJ4
Suite 6248
9800 Savage Road
Fort George G. Meade, MD 20755-6248
(301) 688-6527 (Telephone)
(443) 479-3612 (Fax)

ATTN: Cindy S. Blacker

Re:   **FREEDOM OF INFORMATION ACT REQUEST.**

Dear Madam/Sir:

Pursuant to the Freedom of Information Act (5 U.S.C. § 552), and its regulations, Freedom
Watch, Inc., on behalf of itself and its clients, some surviving family members of Extortion 17,
requests that that the National Security Agency, produce all documents that refer or relate in any
way to the deaths of the following U.S. military servicemen who were killed in a helicopter crash
in Afghanistan on or about August 6, 2011 concerning a mission named Extortion 17 and any
and all documents that refer or relate in any way to the Congressional hearing held by the
Committee on Oversight & Government Reform on February 27, 2014:

Part A.

1. Lt. Cmdr. (SEAL) Jonas B. Kelsall
2. Special Warfare Operator Master Chief Petty Officer (SEAL) Louis J. Langlais
3. Special Warfare Operator Senior Chief Petty Officer (SEAL) Thomas A. Ratzlaff
4. Explosive Ordnance Disposal Technician Senior Chief Petty Officer (Expeditionary
   Warfare Specialist/Freefall Parachutist) Kraig M. Vickers
5. Special Warfare Operator Chief Petty Officer (SEAL) Brian R. Bill
6. Special Warfare Operator Chief Petty Officer (SEAL) John W. Faas
7. Special Warfare Operator Chief Petty Officer (SEAL) Kevin A. Houston
8. Special Warfare Operator Chief Petty Officer (SEAL) Matthew D. Mason
9. Special Warfare Operator Chief Petty Officer (SEAL) Stephen M. Mills

1

10. Explosive Ordinance Disposal Technician Chief Petty Officer (Expeditionary Warfare Specialist/Freefall Parachutist/Diver) Nicholas H. Null
11. Special Warfare Operator Chief Petty Officer (SEAL) Robert J. Reeves
12. Special Warfare Operator Chief Petty Officer (SEAL) Heath M. Robinson
13. Special Warfare Operator Chief Petty Officer 1st Class (SEAL) Darrik C. Benson
14. Special Warfare Operator Chief Petty Officer 1st Class (SEAL/Parachutist) Christopher G. Campbell
15. Information Systems Technician Petty Officer 1st Class (Expeditionary Warfare Specialist/Freefall Parachutist) Jared W. Day
16. Master-at-Arms Petty Officer 1st Class (Expeditionary Warfare Specialist) John Douangdara
17. Cryptologist Technician (Collection) Petty Officer 1st Class (Expeditionary Warfare Specialist) Michael J. Strange
18. Special Warfare Operator Petty Officer 1st Class (SEAL/Enlisted Surface Warfare Specialist) Jon T. Tumilson
19. Special Warfare Operator Petty Officer 1st Class (SEAL) Aaron C. Vaughn
20. Special Warfare Operator Petty Officer 1st Class (SEAL) Jason R. Workman
21. Special Warfare Operator Petty Officer 1st Class (SEAL) Jesse D. Pittman
22. Special Warfare Operator Petty Officer 2nd Class (SEAL) Nicholas P. Spehar
23. Tech. Sgt. John W. Brown, 33, of Tallahassee, FL.
24. Staff Sgt. Andrew W. Harvell, 26, of Long Beach, CA.
25. Tech. Sgt. Daniel L. Zerbe, 28, of York, PA.
26. Chief Warrant Officer David R. Carter, assigned to the 2nd Battalion, 135th Aviation Regiment (General Support Aviation Battalion)
27. Chief Warrant Officer Bryan J. Nichols, assigned to the 7th Battalion, 158th Aviation Regiment (General Support Aviation Battalion)
28. Staff Sgt. Patrick D. Hamburger, assigned to the 2nd Battalion, 135th Aviation Regiment (General Support Aviation Battalion)
29. Sgt. Alexander J. Bennett, assigned to the 7th Battalion, 158th Aviation Regiment (General Support Aviation Battalion)
30. Spc. Spencer C. Duncan, assigned to the 7th Battalion, 158th Aviation Regiment (General Support Aviation Battalion)

## **DEFINITION**

For the purposes of this Freedom of Information Act request, the term "document" is hereby defined expansively to include any or all of the following, whether existing as electronic, digital, or computer data, in electronic or digital form, or in paper form: correspondence, letters, memoranda, recommendations, statements, audits, list of names, applications, diskettes, expense logs and receipts, calendar or diary logs, folders, files, books, manuals, pamphlets, drawings, charts, photographs, records, orders, plans, proposals, meeting agendas, minutes of meetings, briefing materials, notes of phone messages or visits, routing slips, buck slips, standard government forms containing information filled in on lines or blank spaces, slide presentations, "card decks" (for presentations at meetings), power-point presentations, facsimiles (faxes), notes, handwritten notes, notes to the file, requests for decision, requests for authorization, tape

recordings, video recordings, electronic mail (email) messages, summaries, briefs, orders, written decisions, applications, telephone records, tape recordings, and other documents and things.

Freedom Watch, Inc. hereby requests from the Department of Defense, National Security Agency, produce all documents which refer or relate in any way to each of the specific requests stated below, each request considered separately:

Part B.

Freedom Watch requests any and all information pertaining to the following:

1.  Any and all documents that refer or relate in any way to the decision to invite a Muslim cleric to pray at the ramp ceremony in Afghanistan for the above U.S. servicemen.

2.  Any and all information that refers or relates to the missing "black box" – as described to the families of Extortion 17 at a debriefing held October 12, 2011 by General Colt as "missing" – which may show the reasons for the crash of the subject CH-47D helicopter mission, Extortion 17.

3.  Any and all documents that refer or relate to the seven Afghani military servicemen who were originally scheduled to depart with Extortion 17 and whose names are on the official manifest.

4.  Any and all documents that refer or relate to the seven Afghani military servicemen who were switched in and substituted immediately prior to departure of Extortion 17 whose names are not on the official manifest.

5.  Any and all documents that refer or relate to the decision that seven Afghani military servicemen were substituted out on the flight of Extortion 17 as described in the official crash report provided to the families at the debriefing on October 12, 2011.

6.  All autopsy reports, any and all photographs, X-rays, magnetic resonance images, remains, and all electronic or other recordations of the remains of the seven Afghani military servicemen who died on the flight of Extortion 17.

7.  Any and all documents that refer or relate to the decision to bring the bodies of the dead Afghani military servicemen on Extortion 17 back to the U.S's Dover Air Force Base.

8.  Any and all documents and things that refer or relate to a flash flood that allegedly washed away Extortion 17's "black box."

9.  Any and all documents that refer or relate to the crash report given to the families by the U.S. military that states on May 11, 2011, over 100 Taliban planned to travel to the Tangi Valley with the express intent of shooting down a coalition force aircraft. This is from an

interview of TF (redacted) HARC CHIEF opened at 2105 Zulu, 16 August 2011; Declassified on 7 September 2036.

10. Any and all documents and things that refer or relate to the weather in the area of the crash of Extortion 17 on August 6, 2011 and ten (10) days thereafter.

11. Any and all documents that refer or relate to the final decision of the U.S. military to work with the Operational Coordination Group (OCG) made up of the Afghan National Army, the National Director for Security, and the National Police Force.

12. Any and all documents that refer or relate to any final decision to cremate any of the dead servicemen of Extortion 17 as well as the seven Afghani military servicemen who died on Extortion 17, including but not limited to the names and identities of the servicemen who were cremated and the reasons for their cremation.

13. Any and all documents and final decisions that refer or relate to why Admiral Eric Olson abandoned or left Afghanistan on August 8, 2011, two (2) days after the crash of Extortion 17.

14. Any and all documents and final decisions that refer or relate to why General Petraeus abandoned or left Afghanistan on August 16, 2011, ten (10) days after the crash of Extortion 17.

15. Any and all documents and final decisions that refer or relate to why Lieutenant General Joseph L. Votel III abandoned or left Afghanistan immediately after the crash of Extortion 17.

16. Any and all documents and final decisions that refer or relate in any way to employing a CH-47D Chinook helicopter, made in the 1960's and last retrofitted in the 1980's, into an active battle zone carrying 30 U.S. military servicemen.

17. Any and all documents and things that refer or relate in any way to the public disclosure by Vice President Biden, Defense Secretary Leon Panetta and others, that SEAL Team VI was responsible for killing Osama Bin Laden.

18. Any and all documents and things that refer or relate to the cause or potential cause of the attack and shoot-down of Extortion 17.

19. Any and all documents and things that refer or relate to the attack and shoot-down of Extortion 17.

20. Any and all documents and things that refer or relate in any way to autopsy reports, any and all photographs, X-rays, magnetic resonance images, and all electronic or other recordations of the remains of the above U.S. military servicemen.

21. Any and all documents, things or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the House Committee on Oversight & Government Reform regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

22. Any and all documents, things or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Congressman Darrell Issa regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

23. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Congressman Jason Chaffetz, and/or any staff members of Congressman Chaffetz, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

24. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Islamic Republic of Iran regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

25. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Mahmoud Ahmadinejad, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

26. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Ayatollah Sayyid Ali Hosyni Khamenei, Supreme Leader of Iran, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

27. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Army of the Guardians of the Islamic Revolution, or the IRGC, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

28. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and

Hamid Karzai, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

29. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Afghan Operational Coordination Group, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

30. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Afghan Special Operations Unit, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

31. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Afghan National Security Forces, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

32. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Islamic Republic of Afghanistan, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

33. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Taliban, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

34. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Al Qaeda, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

35. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and any employee or advisor of The White House regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

36. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Barack H. Obama, the President of the United States, regarding Extortion 17.

37. Any and all documents that refer or relate in any way to Extortion 17 and the United States Secretary of Defense, Chuck Hagel, regarding Extortion 17.

38. Any and all documents that refer, relate or concern communications between family members of those who died on Extortion 17 and the House Committee on Oversight & Government Reform and/or the Department of Defense, including the Department of the Navy, Air Force, Army and the Marines.

39. Any and all documents that refer, relate or concern Larry Klayman, Esq., Freedom Watch, Inc. and Extortion 17.

40. Any and all documents that refer, relate or concern communications between the Department of Defense, including but not limited to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the staff of the House Committee on Oversight & Government Reform concerning Extortion 17, which staff includes but is not limited to James Lewis, Mitchell Kominsky, and Ariana Andonian, whether or not any such communications occurred on official congressional email or stationary or through other means including private email accounts or other email accounts attributed to other government entities or agencies, or third parties.

41. Any and all documents that refer, relate or concern communications between the Department of Defense, including but not limited to Garry Reid, the House Committee on Oversight & Government Reform and Congressman Robert Brady, including his staff, regarding the shoot-down of Extortion 17.

42. Any and all documents that refer, relate or concern any inventory of the wreckage materials of Extortion 17, including but not limited to ammunition, casings, bullets, vests, and weaponry, found at the crash site related to Extortion 17.

43. Any and all forensic evidence found and collected at the crash site and any inventories thereof related to the shoot-down of Extortion 17.

44. Any and all documents or things that refer or relate in any way to Admiral William H. McRaven and Extortion 17 including but not limited to his meeting with Billy and Karen Vaughn and other families concerning the shoot-down of Extortion 17.

45. Any and all documents, things and/or communications between Admiral William H. McRaven and persons in the White House including but not limited to the President of the United States, concerning Extortion 17.

46. Any and all documents, things and/or communications between Admiral William H. McRaven and the National Security Council concerning Extortion 17.

47. Any and all documents or things that refer or relate in any way to the Department of Defense and any media, reporters, outlets, or sources including those in television, print and radio both domestic and foreign.

48. Any and all documents or things generated by and between the Department of Defense, the National Security Agency and/or the Central Intelligence Agency concerning Extortion 17.

49. Any and all documents which refer or relate in any way to members of the American Armed Forces, at whatever grade, who provided information to the Taliban concerning Extortion 17 prior or after its shoot-down.

50. Any and all documents comprising communications by and between the Department of Defense and the Department of State regarding Extortion 17 and Afghanistan's participation, role and/or complicity in the shoot-down of Extortion 17.

51. Any and all documents or things which refer or relate in any way to communications by and between the Department of Defense and/or Department of State with the office of, and persons therein, former President Hamid Karzai concerning Extortion 17.

52. Any and all documents or things that refer or relate in any way to the exact date and time the Department of Defense learned of the shoot-down of Extortion 17.

53. Any and all documents or things that refer or relate in any way to whether or not there was Iranian involvement or any other foreign entity or interest including but not limited to terrorist interests in the shoot-down of Extortion 17.

54. Any and all documents or things that refer or relate in any way as to whether Extortion 17 was compromised by American government agents, including but not limited to those in the U.S. military, including but not limited to agents or representatives of the Central Intelligence Agency or other government agencies.

## <u>LEGAL REQUIREMENTS</u>

The Obama Administration has announced its policy of compliance with Freedom of Information Act requests and directed Federal agencies to comply with the following policy: "President Obama and Attorney General Holder have directed agencies to apply a presumption of openness in responding to FOIA requests. The Attorney General specifically called on agencies not to withhold information just because it technically falls within an exception and he also encouraged agencies to make discretionary releases of records. The Attorney General emphasized that the President has called on agencies to work in a spirit of cooperation with FOIA requesters. The Office of Information Policy at the Department of Justice oversees agency compliance with these directives and encourages all agencies to **fully comply with both the letter and the spirit of the**

8

**FOIA. President Obama has pledged to make this the most transparent Administration in history.**" (emphasis added) http://www.foia.gov/about.html.

Similarly, President Clinton instructed agencies in October 1993 to ensure compliance with both the spirit and the letter of the Act. *See* President Clinton's FOIA Memorandum, U.S. Department of Justice, FOIA Update, Summer/Fall 1993, at 3.

In addition, Attorney General Reno issued a FOIA Memorandum in October 1993 which *inter alia* states, "I strongly encourage your FOIA officers to make 'discretionary disclosures' whenever possible under the Act," and orders "as presumption of disclosure." *See* Attorney General Reno's FOIA Memorandum, U.S. Department of Justice, FOIA Update, Spring 1994, at 1-2.

If any responsive record or portion thereof is claimed to be exempt from production under FOIA, sufficient identifying information (with respect to each allegedly exempt record or portion thereof) must be provided to allow the assessment of the propriety of the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974). Additionally, pursuant to law, any reasonably segregable portion of a responsive record must be provided after redaction of any allegedly exempt material. 5 U.S.C. §552(b).

If any documents are withheld subject to any claim of privilege, Freedom Watch, Inc. requests complete information about each document withheld, including which paragraph of the request to which the document is responsive; the author and title of the document; an explanation of the applicability of the claimed exemption to the contents of the document; and the name and title of each person responsible for the denial.

Freedom Watch, Inc. requests a waiver of all fees for this request under 5. U.S.C. § 552(a)(4)(A)(iii); *see also, Larson v. Central Intelligence Agency*, 843 F.2d 1482, 1483 (D.C.Cir. 1988); *National Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1385-87 (D.C.Cir. 1989); *see also, Judicial Watch, Inc. v. United States Dep't. of Commerce*, No. 95-0133 (D.D.C. May 16, 1995) (order granting Judicial Watch, Inc.'s request for fee waiver with regard to all responsive documents in proceeding).

Freedom Watch, Inc. is a non-profit, non-partisan, tax-exempt 501(c)(3) organization which as a public interest law firm specializes in deterring, monitoring, uncovering, and addressing public corruption in government. Freedom Watch, Inc. has and will hold Republicans, Democrats, and Independents equally accountable to ethical and legal standards for honest and open government.

The requester has no commercial purpose as a 501(c)(3) non-profit organization organized exclusively to improve the ethical and legal standards in government, accountability of government officials to the rule of law, and public understanding of government operations.

Freedom Watch, Inc. will also use the requested material to promote accountable government as a representative of the news media and the public in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(II) and *National Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1385-87 (D.C.Cir. 1989), by disseminating relevant information which may be uncovered.

9

Information will benefit the public by identifying areas for future reform as well as deterring future abuses that could otherwise proliferate without scrutiny.

The subject of this request is information concerning the operations and activities of the government.  Past experience of Freedom Watch, Inc. demonstrates the success of Freedom Watch, Inc. in uncovering important facts about government activities, integrity and operations, of broad concern to the public. Thus, Freedom Watch, Inc.'s request is likely to "contribute significantly" to the public's understanding of the operations of their government, satisfying the requirements of FOIA fee waiver provisions. Freedom Watch, Inc.'s capabilities and effectiveness are a matter of public record.

Immediate release of the requested information is in the public interest, including for promoting confidence in an honest democratic system, and furthering the integrity of the American national government by deterring and/or sanctioning corrupt activities.  The failure to do so will likely result in the further compromise of important interests of the American people.

Here, twenty-two (22) special ops and eight (8) other military servicemen, including members of Navy SEAL Team VI, the group that killed Osama Bin Laden, were killed by the Taliban in likely retaliation. Thus, this is a matter of great public interest to the American people.

Freedom Watch, Inc. hereby requests expedited processing of this request pursuant to 5 U.S.C. §552 (a)(6)(E)(ii)(I), as there is a compelling need for the information and time is truly of the essence in this matter.

I look forward to receiving the requested documents and a full fee waiver within twenty (20) business days.

Sincerely,


/s/ *Larry Klayman*
Larry Klayman
Chairman & General Counsel
Freedom Watch, Inc.
2020 Pennsylvania Ave. Ste. 345
Washington, DC 20006

leklayman@gmail.com



**FREEDOM WATCH**

► www.FreedomWatchUSA.org

► **World Headquarters** 2020 Pennsylvania Avenue, N.W., Suite 345, Washington, DC 20006-1811   ► (310) 595-0800   ► leklayman@gmail.com

July 21, 2014

***VIA CERTIFIED MAIL, FASCIMILE. RETURN RECEIPT REQUESTED.***

Information and Privacy Coordinator
Central Intelligence Agency
Washington, DC 20505

(703) 613-3007 (Fax)

**Re:     FREEDOM OF INFORMATION ACT REQUEST.**

Dear Madam/Sir:

Pursuant to the Freedom of Information Act (5 U.S.C. § 552), and its regulations, Freedom
Watch, Inc., on behalf of itself and its clients, some surviving family members of Extortion 17,
request that that the Central Intelligence Agency, produce all documents that refer or relate in
any way to the deaths of the following U.S. military servicemen who were killed in a helicopter
crash in Afghanistan on or about August 6, 2011 concerning a mission named Extortion 17 and
any and all documents that refer or relate in any way to the Congressional hearing held by the
House Committee on Oversight & Government Reform on February 27, 2014:

Part A.

1.  Lt. Cmdr. (SEAL) Jonas B. Kelsall
2.  Special Warfare Operator Master Chief Petty Officer (SEAL) Louis J. Langlais
3.  Special Warfare Operator Senior Chief Petty Officer (SEAL) Thomas A. Ratzlaff
4.  Explosive Ordnance Disposal Technician Senior Chief Petty Officer (Expeditionary
    Warfare Specialist/Freefall Parachutist) Kraig M. Vickers
5.  Special Warfare Operator Chief Petty Officer (SEAL) Brian R. Bill
6.  Special Warfare Operator Chief Petty Officer (SEAL) John W. Faas
7.  Special Warfare Operator Chief Petty Officer (SEAL) Kevin A. Houston
8.  Special Warfare Operator Chief Petty Officer (SEAL) Matthew D. Mason
9.  Special Warfare Operator Chief Petty Officer (SEAL) Stephen M. Mills
10. Explosive Ordinance Disposal Technician Chief Petty Officer (Expeditionary Warfare
    Specialist/Freefall Parachutist/Diver) Nicholas H. Null
11. Special Warfare Operator Chief Petty Officer (SEAL) Robert J. Reeves
12. Special Warfare Operator Chief Petty Officer (SEAL) Heath M. Robinson
13. Special Warfare Operator Chief Petty Officer 1st Class (SEAL) Darrik C. Benson

14. Special Warfare Operator Chief Petty Officer 1st Class (SEAL/Parachutist) Christopher G. Campbell
15. Information Systems Technician Petty Officer 1st Class (Expeditionary Warfare Specialist/Freefall Parachutist) Jared W. Day
16. Master-at-Arms Petty Officer 1st Class (Expeditionary Warfare Specialist) John Douangdara
17. Cryptologist Technician (Collection) Petty Officer 1st Class (Expeditionary Warfare Specialist) Michael J. Strange
18. Special Warfare Operator Petty Officer 1st Class (SEAL/Enlisted Surface Warfare Specialist) Jon T. Tumilson
19. Special Warfare Operator Petty Officer 1st Class (SEAL) Aaron C. Vaughn
20. Special Warfare Operator Petty Officer 1st Class (SEAL) Jason R. Workman
21. Special Warfare Operator Petty Officer 1st Class (SEAL) Jesse D. Pittman
22. Special Warfare Operator Petty Officer 2nd Class (SEAL) Nicholas P. Spehar
23. Tech. Sgt. John W. Brown, 33, of Tallahassee, FL.
24. Staff Sgt. Andrew W. Harvell, 26, of Long Beach, CA.
25. Tech. Sgt. Daniel L. Zerbe, 28, of York, PA.
26. Chief Warrant Officer David R. Carter, assigned to the 2nd Battalion, 135th Aviation Regiment (General Support Aviation Battalion)
27. Chief Warrant Officer Bryan J. Nichols, assigned to the 7th Battalion, 158th Aviation Regiment (General Support Aviation Battalion)
28. Staff Sgt. Patrick D. Hamburger, assigned to the 2nd Battalion, 135th Aviation Regiment (General Support Aviation Battalion)
29. Sgt. Alexander J. Bennett, assigned to the 7th Battalion, 158th Aviation Regiment (General Support Aviation Battalion)
30. Spc. Spencer C. Duncan, assigned to the 7th Battalion, 158th Aviation Regiment (General Support Aviation Battalion)

## **DEFINITION**

For the purposes of this Freedom of Information Act request, the term "document" is hereby defined expansively to include any or all of the following, whether existing as electronic, digital, or computer data, in electronic or digital form, or in paper form: correspondence, letters, memoranda, recommendations, statements, audits, list of names, applications, diskettes, expense logs and receipts, calendar or diary logs, folders, files, books, manuals, pamphlets, drawings, charts, photographs, records, orders, plans, proposals, meeting agendas, minutes of meetings, briefing materials, notes of phone messages or visits, routing slips, buck slips, standard government forms containing information filled in on lines or blank spaces, slide presentations, "card decks" (for presentations at meetings), power-point presentations, facsimiles (faxes), notes, handwritten notes, notes to the file, requests for decision, requests for authorization, tape recordings, video recordings, electronic mail (email) messages, summaries, briefs, orders, written decisions, applications, telephone records, tape recordings, and other documents and things.

Freedom Watch, Inc. hereby requests from the Central Intelligence Agency, produce all documents which refer or relate in any way to each of the specific requests stated below, each request considered separately:

Part B.

Freedom Watch requests any and all information pertaining to the following:

1. Any and all documents that refer or relate in any way to the decision to invite a Muslim cleric to pray at the ramp ceremony in Afghanistan for the above U.S. servicemen.

2. Any and all information that refers or relates to the missing "black box" – as described to the families of Extortion 17 at a debriefing held October 12, 2011 by General Colt as "missing" – which may show the reasons for the crash of the subject CH-47D helicopter mission, Extortion 17.

3. Any and all documents that refer or relate to the seven Afghani military servicemen who were originally scheduled to depart with Extortion 17 and whose names are on the official manifest.

4. Any and all documents that refer or relate to the seven Afghani military servicemen who were switched in and substituted immediately prior to departure of Extortion 17 whose names are not on the official manifest.

5. Any and all documents that refer or relate to the decision that seven Afghani military servicemen were substituted out on the flight of Extortion 17 as described in the official crash report provided to the families at the debriefing on October 12, 2011.

6. All autopsy reports, any and all photographs, X-rays, magnetic resonance images, remains, and all electronic or other recordations of the remains of the seven Afghani military servicemen who died on the flight of Extortion 17.

7. Any and all documents that refer or relate to the decision to bring the bodies of the dead Afghani military servicemen on Extortion 17 back to the U.S's Dover Air Force Base.

8. Any and all documents and things that refer or relate to a flash flood that allegedly washed away Extortion 17's "black box."

9. Any and all documents that refer or relate to the crash report given to the families by the U.S. military that states on May 11, 2011, over 100 Taliban planned to travel to the Tangi Valley with the express intent of shooting down a coalition force aircraft. This is from an interview of TF (redacted) HARC CHIEF opened at 2105 Zulu, 16 August 2011; Declassified on 7 September 2036.

10. Any and all documents and things that refer or relate to the weather in the area of the crash of Extortion 17 on August 6, 2011 and ten (10) days thereafter.

11. Any and all documents that refer or relate to the final decision of the U.S. military to work with the Operational Coordination Group (OCG) made up of the Afghan National Army, the National Director for Security, and the National Police Force.

12. Any and all documents that refer or relate to any final decision to cremate any of the dead servicemen of Extortion 17 as well as the seven Afghani military servicemen who died on Extortion 17, including but not limited to the names and identities of the servicemen who were cremated and the reasons for their cremation.

13. Any and all documents and final decisions that refer or relate to why Admiral Eric Olson abandoned or left Afghanistan on August 8, 2011, two (2) days after the crash of Extortion 17.

14. Any and all documents and final decisions that refer or relate to why General Petraeus abandoned or left Afghanistan on August 16, 2011, ten (10) days after the crash of Extortion 17.

15. Any and all documents and final decisions that refer or relate to why Lieutenant General Joseph L. Votel III abandoned or left Afghanistan immediately after the crash of Extortion 17.

16. Any and all documents and final decisions that refer or relate in any way to employing a CH-47D Chinook helicopter, made in the 1960's and last retrofitted in the 1980's, into an active battle zone carrying 30 U.S. military servicemen.

17. Any and all documents and things that refer or relate in any way to the public disclosure by Vice President Biden, Defense Secretary Leon Panetta and others, that SEAL Team VI was responsible for killing Osama Bin Laden.

18. Any and all documents and things that refer or relate to the cause or potential cause of the attack and shoot-down of Extortion 17.

19. Any and all documents and things that refer or relate to the attack and shoot-down of Extortion 17.

20. Any and all documents and things that refer or relate in any way to autopsy reports, any and all photographs, X-rays, magnetic resonance images, and all electronic or other recordations of the remains of the above U.S. military servicemen.

21. Any and all documents, things or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the House Committee on Oversight & Government Reform regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

22. Any and all documents, things or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Congressman Darrell Issa regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

23. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Congressman Jason Chaffetz, and/or any staff members of Congressman Chaffetz, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

24. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Islamic Republic of Iran regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

25. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Mahmoud Ahmadinejad, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

26. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Ayatollah Sayyid Ali Hosyni Khamenei, Supreme Leader of Iran, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

27. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Army of the Guardians of the Islamic Revolution, or the IRGC, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

28. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Hamid Karzai, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

29. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the

Afghan Operational Coordination Group, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

30. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Afghan Special Operations Unit, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

31. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Afghan National Security Forces, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

32. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Islamic Republic of Afghanistan, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

33. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Taliban, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

34. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Al Qaeda, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

35. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and any employee or advisor of The White House regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

36. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Barack H. Obama, the President of the United States, regarding Extortion 17.

37. Any and all documents that refer or relate in any way to Extortion 17 and the United States Secretary of Defense, Chuck Hagel, regarding Extortion 17.

38. Any and all documents that refer, relate or concern communications between family members of those who died on Extortion 17 and the House Committee on Oversight & Government Reform and/or the Department of Defense, including the Department of the Navy, Air Force, Army and the Marines.

39. Any and all documents that refer, relate or concern Larry Klayman, Esq., Freedom Watch, Inc. and Extortion 17.

40. Any and all documents that refer, relate or concern communications between the Department of Defense, including but not limited to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the staff of the House Committee on Oversight & Government Reform concerning Extortion 17, which staff includes but is not limited to James Lewis, Mitchell Kominsky, and Ariana Andonian, whether or not any such communications occurred on official congressional email or stationary or through other means including private email accounts or other email accounts attributed to other government entities or agencies, or third parties.

41. Any and all documents that refer, relate or concern communications between the Department of Defense, including but not limited to Garry Reid, the House Committee on Oversight & Government Reform and Congressman Robert Brady, including his staff, regarding the shoot-down of Extortion 17.

42. Any and all documents that refer, relate or concern any inventory of the wreckage materials of Extortion 17, including but not limited to ammunition, casings, bullets, vests, and weaponry, found at the crash site related to Extortion 17.

43. Any and all forensic evidence found and collected at the crash site and any inventories thereof related to the shoot-down of Extortion 17.

44. Any and all documents or things that refer or relate in any way to Admiral William H. McRaven and Extortion 17 including but not limited to his meeting with Billy and Karen Vaughn and other families concerning the shoot-down of Extortion 17.

45. Any and all documents, things and/or communications between Admiral William H. McRaven and persons in the White House including but not limited to the President of the United States, concerning Extortion 17.

46. Any and all documents, things and/or communications between Admiral William H. McRaven and the National Security Council concerning Extortion 17.

47. Any and all documents or things that refer or relate in any way to the Department of Defense and any media, reporters, outlets, or sources including those in television, print and radio both domestic and foreign.

48. Any and all documents or things generated by and between the Department of Defense, the National Security Agency and/or the Central Intelligence Agency concerning Extortion 17.

49. Any and all documents which refer or relate in any way to members of the American Armed Forces, at whatever grade, who provided information to the Taliban concerning Extortion 17 prior or after its shoot-down.

50. Any and all documents comprising communications by and between the Department of Defense and the Department of State regarding Extortion 17 and Afghanistan's participation, role and/or complicity in the shoot-down of Extortion 17.

51. Any and all documents or things which refer or relate in any way to communications by and between the Department of Defense and/or Department of State with the office of, and persons therein, former President Hamid Karzai concerning Extortion 17.

52. Any and all documents or things that refer or relate in any way to the exact date and time the Department of Defense learned of the shoot-down of Extortion 17.

53. Any and all documents or things that refer or relate in any way to whether or not there was Iranian involvement or any other foreign entity or interest including but not limited to terrorist interests in the shoot-down of Extortion 17.

54. Any and all documents or things that refer or relate in any way as to whether Extortion 17 was compromised by American government agents, including but not limited to those in the U.S. military, including but not limited to agents or representatives of the Central Intelligence Agency or other government agencies.

## LEGAL REQUIREMENTS

The Obama Administration has announced its policy of compliance with Freedom of Information Act requests and directed Federal agencies to comply with the following policy: "President Obama and Attorney General Holder have directed agencies to apply a presumption of openness in responding to FOIA requests. The Attorney General specifically called on agencies not to withhold information just because it technically falls within an exception and he also encouraged agencies to make discretionary releases of records. The Attorney General emphasized that the President has called on agencies to work in a spirit of cooperation with FOIA requesters. The Office of Information Policy at the Department of Justice oversees agency compliance with these directives and encourages all agencies to **fully comply with both the letter and the spirit of the FOIA**. **President Obama has pledged to make this the most transparent Administration in history.**" (emphasis added) http://www.foia.gov/about.html.

Similarly, President Clinton instructed agencies in October 1993 to ensure compliance with both the spirit and the letter of the Act. *See* President Clinton's FOIA Memorandum, U.S. Department of Justice, FOIA Update, Summer/Fall 1993, at 3.

In addition, Attorney General Reno issued a FOIA Memorandum in October 1993 which *inter alia* states, "I strongly encourage your FOIA officers to make 'discretionary disclosures' whenever possible under the Act," and orders "as presumption of disclosure." *See* Attorney General Reno's FOIA Memorandum, U.S. Department of Justice, FOIA Update, Spring 1994, at 1-2.

If any responsive record or portion thereof is claimed to be exempt from production under FOIA, sufficient identifying information (with respect to each allegedly exempt record or portion thereof) must be provided to allow the assessment of the propriety of the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974). Additionally, pursuant to law, any reasonably segregable portion of a responsive record must be provided after redaction of any allegedly exempt material. 5 U.S.C. §552(b).

If any documents are withheld subject to any claim of privilege, Freedom Watch, Inc. requests complete information about each document withheld, including which paragraph of the request to which the document is responsive; the author and title of the document; an explanation of the applicability of the claimed exemption to the contents of the document; and the name and title of each person responsible for the denial.

Freedom Watch, Inc. requests a waiver of all fees for this request under 5. U.S.C. § 552(a)(4)(A)(iii); *see also, Larson v. Central Intelligence Agency*, 843 F.2d 1482, 1483 (D.C.Cir. 1988); *National Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1385-87 (D.C.Cir. 1989); *see also, Judicial Watch, Inc. v. United States Dep't. of Commerce*, No. 95-0133 (D.D.C. May 16, 1995) (order granting Judicial Watch, Inc.'s request for fee waiver with regard to all responsive documents in proceeding).

Freedom Watch, Inc. is a non-profit, non-partisan, tax-exempt 501(c)(3) organization which as a public interest law firm specializes in deterring, monitoring, uncovering, and addressing public corruption in government. Freedom Watch, Inc. has and will hold Republicans, Democrats, and Independents equally accountable to ethical and legal standards for honest and open government.

The requester has no commercial purpose as a 501(c)(3) non-profit organization organized exclusively to improve the ethical and legal standards in government, accountability of government officials to the rule of law, and public understanding of government operations.

Freedom Watch, Inc. will also use the requested material to promote accountable government as a representative of the news media and the public in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(II) and *National Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1385-87 (D.C.Cir. 1989), by disseminating relevant information which may be uncovered. Information will benefit the public by identifying areas for future reform as well as deterring future abuses that could otherwise proliferate without scrutiny.

The subject of this request is information concerning the operations and activities of the government.  Past experience of Freedom Watch, Inc. demonstrates the success of Freedom Watch, Inc. in uncovering important facts about government activities, integrity and operations, of broad concern to the public. Thus, Freedom Watch, Inc.'s request is likely to "contribute

significantly" to the public's understanding of the operations of their government, satisfying the requirements of FOIA fee waiver provisions. Freedom Watch, Inc.'s capabilities and effectiveness are a matter of public record.

Immediate release of the requested information is in the public interest, including for promoting confidence in an honest democratic system, and furthering the integrity of the American national government by deterring and/or sanctioning corrupt activities.  The failure to do so will likely result in the further compromise of important interests of the American people.

Here, twenty-two (22) special ops and eight (8) other military servicemen, including members of Navy SEAL Team VI, the group that killed Osama Bin Laden, were killed by the Taliban in likely retaliation. Thus, this is a matter of great public interest to the American people.

Freedom Watch, Inc. hereby requests expedited processing of this request pursuant to 5 U.S.C. §552 (a)(6)(E)(ii)(I), as there is a compelling need for the information and time is truly of the essence in this matter.

I look forward to receiving the requested documents and a full fee waiver within twenty (20) business days.

Sincerely,


/s/ *Larry Klayman*
Larry Klayman
Chairman & General Counsel
Freedom Watch, Inc.
2020 Pennsylvania Ave. Ste. 345
Washington, DC 20006

leklayman@gmail.com



**FREEDOM WATCH**

► www.FreedomWatchUSA.org

► **World Headquarters** 2020 Pennsylvania Avenue, N.W., Suite 345, Washington, DC 20006-1811   ► (310) 595-0800   ► leklayman@gmail.com

July 21, 2014

***VIA CERTIFIED MAIL, FASCIMILE. RETURN RECEIPT REQUESTED.***

**Department of Defense**
**Office of the Secretary and Joint Staff**
OSD/JS FOIA Requester Service Center
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155
(866) 574-4970 (Telephone)
(571) 372-0500 (Fax)

ATTN: Paul Jacobsmeyer

**Re:**     **FREEDOM OF INFORMATION ACT REQUEST.**

Dear Madam/Sir:

Pursuant to the Freedom of Information Act (5 U.S.C. § 552), and its regulations, Freedom Watch, Inc., on behalf of itself and its clients, some of the surviving family members of Extortion 17,  requests that that the Department of Defense, Office of the Secretary and Joint Staff, produce all documents that refer or relate in any way to the deaths of the following U.S. military servicemen who were killed in a helicopter crash in Afghanistan on or about August 6, 2011 concerning a mission named Extortion 17 and any and all documents that refer or relate in any way to the Congressional hearing held by the House Committee on Oversight & Government Reform on February 27, 2014:

Part A.

1. Lt. Cmdr. (SEAL) Jonas B. Kelsall
2. Special Warfare Operator Master Chief Petty Officer (SEAL) Louis J. Langlais
3. Special Warfare Operator Senior Chief Petty Officer (SEAL) Thomas A. Ratzlaff
4. Explosive Ordinance Disposal Technician Senior Chief Petty Officer (Expeditionary Warfare Specialist/Freefall Parachutist) Kraig M. Vickers
5. Special Warfare Operator Chief Petty Officer (SEAL) Brian R. Bill
6. Special Warfare Operator Chief Petty Officer (SEAL) John W. Faas
7. Special Warfare Operator Chief Petty Officer (SEAL) Kevin A. Houston
8. Special Warfare Operator Chief Petty Officer (SEAL) Matthew D. Mason
9. Special Warfare Operator Chief Petty Officer (SEAL) Stephen M. Mills

10. Explosive Ordinance Disposal Technician Chief Petty Officer (Expeditionary Warfare Specialist/Freefall Parachutist/Diver) Nicholas H. Null
11. Special Warfare Operator Chief Petty Officer (SEAL) Robert J. Reeves
12. Special Warfare Operator Chief Petty Officer (SEAL) Heath M. Robinson
13. Special Warfare Operator Chief Petty Officer 1st Class (SEAL) Darrik C. Benson
14. Special Warfare Operator Chief Petty Officer 1st Class (SEAL/Parachutist) Christopher G. Campbell
15. Information Systems Technician Petty Officer 1st Class (Expeditionary Warfare Specialist/Freefall Parachutist) Jared W. Day
16. Master-at-Arms Petty Officer 1st Class (Expeditionary Warfare Specialist) John Douangdara
17. Cryptologist Technician (Collection) Petty Officer 1st Class (Expeditionary Warfare Specialist) Michael J. Strange
18. Special Warfare Operator Petty Officer 1st Class (SEAL/Enlisted Surface Warfare Specialist) Jon T. Tumilson
19. Special Warfare Operator Petty Officer 1st Class (SEAL) Aaron C. Vaughn
20. Special Warfare Operator Petty Officer 1st Class (SEAL) Jason R. Workman
21. Special Warfare Operator Petty Officer 1st Class (SEAL) Jesse D. Pittman
22. Special Warfare Operator Petty Officer 2nd Class (SEAL) Nicholas P. Spehar
23. Tech. Sgt. John W. Brown, 33, of Tallahassee, FL.
24. Staff Sgt. Andrew W. Harvell, 26, of Long Beach, CA.
25. Tech. Sgt. Daniel L. Zerbe, 28, of York, PA.
26. Chief Warrant Officer David R. Carter, assigned to the 2nd Battalion, 135th Aviation Regiment (General Support Aviation Battalion)
27. Chief Warrant Officer Bryan J. Nichols, assigned to the 7th Battalion, 158th Aviation Regiment (General Support Aviation Battalion)
28. Staff Sgt. Patrick D. Hamburger, assigned to the 2nd Battalion, 135th Aviation Regiment (General Support Aviation Battalion)
29. Sgt. Alexander J. Bennett, assigned to the 7th Battalion, 158th Aviation Regiment (General Support Aviation Battalion)
30. Spc. Spencer C. Duncan, assigned to the 7th Battalion, 158th Aviation Regiment (General Support Aviation Battalion)

## **DEFINITION**

For the purposes of this Freedom of Information Act request, the term "document" is hereby defined expansively to include any or all of the following, whether existing as electronic, digital, or computer data, in electronic or digital form, or in paper form: correspondence, letters, memoranda, recommendations, statements, audits, list of names, applications, diskettes, expense logs and receipts, calendar or diary logs, folders, files, books, manuals, pamphlets, drawings, charts, photographs, records, orders, plans, proposals, meeting agendas, minutes of meetings, briefing materials, notes of phone messages or visits, routing slips, buck slips, standard government forms containing information filled in on lines or blank spaces, slide presentations, "card decks" (for presentations at meetings), power-point presentations, facsimiles (faxes), notes, handwritten notes, notes to the file, requests for decision, requests for authorization, tape

recordings, video recordings, electronic mail (email) messages, summaries, briefs, orders, written decisions, applications, telephone records, tape recordings, and other documents and things.

Freedom Watch, Inc. hereby requests from the Department of Defense, Office of the Secretary and Joint Staff, produce all documents which refer or relate in any way to each of the specific requests stated below, each request considered separately:

Part B.

Freedom Watch requests any and all information pertaining to the following:

1. Any and all documents that refer or relate in any way to the decision to invite a Muslim cleric to pray at the ramp ceremony in Afghanistan for the above U.S. servicemen.

2. Any and all information that refers or relates to the missing "black box" – as described to the families of Extortion 17 at a debriefing held October 12, 2011 by General Colt as "missing" – which may show the reasons for the crash of the subject CH-47D helicopter mission, Extortion 17.

3. Any and all documents that refer or relate to the seven Afghani military servicemen who were originally scheduled to depart with Extortion 17 and whose names are on the official manifest.

4. Any and all documents that refer or relate to the seven Afghani military servicemen who were switched in and substituted immediately prior to departure of Extortion 17 whose names are not on the official manifest.

5. Any and all documents that refer or relate to the decision that seven Afghani military servicemen were substituted out on the flight of Extortion 17 as described in the official crash report provided to the families at the debriefing on October 12, 2011.

6. All autopsy reports, any and all photographs, X-rays, magnetic resonance images, remains, and all electronic or other recordations of the remains of the seven Afghani military servicemen who died on the flight of Extortion 17.

7. Any and all documents that refer or relate to the decision to bring the bodies of the dead Afghani military servicemen on Extortion 17 back to the U.S's Dover Air Force Base.

8. Any and all documents and things that refer or relate to a flash flood that allegedly washed away Extortion 17's "black box."

9. Any and all documents that refer or relate to the crash report given to the families by the U.S. military that states on May 11, 2011, over 100 Taliban planned to travel to the Tangi Valley with the express intent of shooting down a coalition force aircraft. This is from an

interview of TF (redacted) HARC CHIEF opened at 2105 Zulu, 16 August 2011; Declassified on 7 September 2036.

10. Any and all documents and things that refer or relate to the weather in the area of the crash of Extortion 17 on August 6, 2011 and ten (10) days thereafter.

11. Any and all documents that refer or relate to the final decision of the U.S. military to work with the Operational Coordination Group (OCG) made up of the Afghan National Army, the National Director for Security, and the National Police Force.

12. Any and all documents that refer or relate to any final decision to cremate any of the dead servicemen of Extortion 17 as well as the seven Afghani military servicemen who died on Extortion 17, including but not limited to the names and identities of the servicemen who were cremated and the reasons for their cremation.

13. Any and all documents and final decisions that refer or relate to why Admiral Eric Olson abandoned or left Afghanistan on August 8, 2011, two (2) days after the crash of Extortion 17.

14. Any and all documents and final decisions that refer or relate to why General Petraeus abandoned or left Afghanistan on August 16, 2011, ten (10) days after the crash of Extortion 17.

15. Any and all documents and final decisions that refer or relate to why Lieutenant General Joseph L. Votel III abandoned or left Afghanistan immediately after the crash of Extortion 17.

16. Any and all documents and final decisions that refer or relate in any way to employing a CH-47D Chinook helicopter, made in the 1960's and last retrofitted in the 1980's, into an active battle zone carrying 30 U.S. military servicemen.

17. Any and all documents and things that refer or relate in any way to the public disclosure by Vice President Biden, Defense Secretary Leon Panetta and others, that SEAL Team VI was responsible for killing Osama Bin Laden.

18. Any and all documents and things that refer or relate to the cause or potential cause of the attack and shoot-down of Extortion 17.

19. Any and all documents and things that refer or relate to the attack and shoot-down of Extortion 17.

20. Any and all documents and things that refer or relate in any way to autopsy reports, any and all photographs, X-rays, magnetic resonance images, and all electronic or other recordations of the remains of the above U.S. military servicemen.

21. Any and all documents, things or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the House Committee on Oversight & Government Reform regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

22. Any and all documents, things or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Congressman Darrell Issa regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

23. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Congressman Jason Chaffetz, and/or any staff members of Congressman Chaffetz, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

24. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Islamic Republic of Iran regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

25. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Mahmoud Ahmadinejad, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

26. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Ayatollah Sayyid Ali Hosyni Khamenei, Supreme Leader of Iran, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

27. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Army of the Guardians of the Islamic Revolution, or the IRGC, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

28. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and

Hamid Karzai, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

29. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Afghan Operational Coordination Group, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

30. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Afghan Special Operations Unit, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

31. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Afghan National Security Forces, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

32. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Islamic Republic of Afghanistan, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

33. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the Taliban, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

34. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Al Qaeda, regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

35. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and any employee or advisor of The White House regarding the Extortion 17 Congressional hearing which took place on February 27, 2014.

36. Any and all documents, things, or correspondence including but not limited to email, that refer or relate in any way to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and Barack H. Obama, the President of the United States, regarding Extortion 17.

37. Any and all documents that refer or relate in any way to Extortion 17 and the United States Secretary of Defense, Chuck Hagel, regarding Extortion 17.

38. Any and all documents that refer, relate or concern communications between family members of those who died on Extortion 17 and the House Committee on Oversight & Government Reform and/or the Department of Defense, including the Department of the Navy, Air Force, Army and the Marines.

39. Any and all documents that refer, relate or concern Larry Klayman, Esq., Freedom Watch, Inc. and Extortion 17.

40. Any and all documents that refer, relate or concern communications between the Department of Defense, including but not limited to Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low-Intensity Conflict, U.S. Department of Defense, and the staff of the House Committee on Oversight & Government Reform concerning Extortion 17, which staff includes but is not limited to James Lewis, Mitchell Kominsky, and Ariana Andonian, whether or not any such communications occurred on official congressional email or stationary or through other means including private email accounts or other email accounts attributed to other government entities or agencies, or third parties.

41. Any and all documents that refer, relate or concern communications between the Department of Defense, including but not limited to Garry Reid, the House Committee on Oversight & Government Reform and Congressman Robert Brady, including his staff, regarding the shoot-down of Extortion 17.

42. Any and all documents that refer, relate or concern any inventory of the wreckage materials of Extortion 17, including but not limited to ammunition, casings, bullets, vests, and weaponry, found at the crash site related to Extortion 17.

43. Any and all forensic evidence found and collected at the crash site and any inventories thereof related to the shoot-down of Extortion 17.

44. Any and all documents or things that refer or relate in any way to Admiral William H. McRaven and Extortion 17 including but not limited to his meeting with Billy and Karen Vaughn and other families concerning the shoot-down of Extortion 17.

45. Any and all documents, things and/or communications between Admiral William H. McRaven and persons in the White House including but not limited to the President of the United States, concerning Extortion 17.

46. Any and all documents, things and/or communications between Admiral William H. McRaven and the National Security Council concerning Extortion 17.

47. Any and all documents or things that refer or relate in any way to the Department of Defense and any media, reporters, outlets, or sources including those in television, print and radio both domestic and foreign.

48. Any and all documents or things generated by and between the Department of Defense, the National Security Agency and/or the Central Intelligence Agency concerning Extortion 17.

49. Any and all documents which refer or relate in any way to members of the American Armed Forces, at whatever grade, who provided information to the Taliban concerning Extortion 17 prior or after its shoot-down.

50. Any and all documents comprising communications by and between the Department of Defense and the Department of State regarding Extortion 17 and Afghanistan's participation, role and/or complicity in the shoot-down of Extortion 17.

51. Any and all documents or things which refer or relate in any way to communications by and between the Department of Defense and/or Department of State with the office of, and persons therein, former President Hamid Karzai concerning Extortion 17.

52. Any and all documents or things that refer or relate in any way to the exact date and time the Department of Defense learned of the shoot-down of Extortion 17.

53. Any and all documents or things that refer or relate in any way to whether or not there was Iranian involvement or any other foreign entity or interest including but not limited to terrorist interests in the shoot-down of Extortion 17.

54. Any and all documents or things that refer or relate in any way as to whether Extortion 17 was compromised by American government agents, including but not limited to those in the U.S. military, including but not limited to agents or representatives of the Central Intelligence Agency or other government agencies.

## <u>LEGAL REQUIREMENTS</u>

The Obama Administration has announced its policy of compliance with Freedom of Information Act requests and directed Federal agencies to comply with the following policy: "President Obama and Attorney General Holder have directed agencies to apply a presumption of openness in responding to FOIA requests. The Attorney General specifically called on agencies not to withhold information just because it technically falls within an exception and he also encouraged agencies to make discretionary releases of records. The Attorney General emphasized that the President has called on agencies to work in a spirit of cooperation with FOIA requesters. The Office of Information Policy at the Department of Justice oversees agency compliance with these directives and encourages all agencies to **fully comply with both the letter and the spirit of the**

**FOIA**. **President Obama has pledged to make this the most transparent Administration in history.**" (emphasis added) http://www.foia.gov/about.html.

Similarly, President Clinton instructed agencies in October 1993 to ensure compliance with both the spirit and the letter of the Act. *See* President Clinton's FOIA Memorandum, U.S. Department of Justice, FOIA Update, Summer/Fall 1993, at 3.

In addition, Attorney General Reno issued a FOIA Memorandum in October 1993 which *inter alia* states, "I strongly encourage your FOIA officers to make 'discretionary disclosures' whenever possible under the Act," and orders "as presumption of disclosure." *See* Attorney General Reno's FOIA Memorandum, U.S. Department of Justice, FOIA Update, Spring 1994, at 1-2.

If any responsive record or portion thereof is claimed to be exempt from production under FOIA, sufficient identifying information (with respect to each allegedly exempt record or portion thereof) must be provided to allow the assessment of the propriety of the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974). Additionally, pursuant to law, any reasonably segregable portion of a responsive record must be provided after redaction of any allegedly exempt material. 5 U.S.C. §552(b).

If any documents are withheld subject to any claim of privilege, Freedom Watch, Inc. requests complete information about each document withheld, including which paragraph of the request to which the document is responsive; the author and title of the document; an explanation of the applicability of the claimed exemption to the contents of the document; and the name and title of each person responsible for the denial.

Freedom Watch, Inc. requests a waiver of all fees for this request under 5. U.S.C. § 552(a)(4)(A)(iii); *see also, Larson v. Central Intelligence Agency*, 843 F.2d 1482, 1483 (D.C.Cir. 1988); *National Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1385-87 (D.C.Cir. 1989); *see also, Judicial Watch, Inc. v. United States Dep't. of Commerce*, No. 95-0133 (D.D.C. May 16, 1995) (order granting Judicial Watch, Inc.'s request for fee waiver with regard to all responsive documents in proceeding).

Freedom Watch, Inc. is a non-profit, non-partisan, tax-exempt 501(c)(3) organization which as a public interest law firm specializes in deterring, monitoring, uncovering, and addressing public corruption in government. Freedom Watch, Inc. has and will hold Republicans, Democrats, and Independents equally accountable to ethical and legal standards for honest and open government.

The requester has no commercial purpose as a 501(c)(3) non-profit organization organized exclusively to improve the ethical and legal standards in government, accountability of government officials to the rule of law, and public understanding of government operations.

Freedom Watch, Inc. will also use the requested material to promote accountable government as a representative of the news media and the public in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(II) and *National Sec. Archive v. U.S. Dept. of Defense*, 880 F.2d 1381, 1385-87 (D.C.Cir. 1989), by disseminating relevant information which may be uncovered.

Information will benefit the public by identifying areas for future reform as well as deterring future abuses that could otherwise proliferate without scrutiny.

The subject of this request is information concerning the operations and activities of the government.  Past experience of Freedom Watch, Inc. demonstrates the success of Freedom Watch, Inc. in uncovering important facts about government activities, integrity and operations, of broad concern to the public. Thus, Freedom Watch, Inc.'s request is likely to "contribute significantly" to the public's understanding of the operations of their government, satisfying the requirements of FOIA fee waiver provisions. Freedom Watch, Inc.'s capabilities and effectiveness are a matter of public record.

Immediate release of the requested information is in the public interest, including for promoting confidence in an honest democratic system, and furthering the integrity of the American national government by deterring and/or sanctioning corrupt activities.  The failure to do so will likely result in the further compromise of important interests of the American people.

Here, twenty-two (22) special ops and eight (8) other military servicemen, including members of Navy SEAL Team VI, the group that killed Osama Bin Laden, were killed by the Taliban in likely retaliation. Thus, this is a matter of great public interest to the American people.

Freedom Watch, Inc. hereby requests expedited processing of this request pursuant to 5 U.S.C. §552 (a)(6)(E)(ii)(I), as there is a compelling need for the information and time is truly of the essence in this matter.

I look forward to receiving the requested documents and a full fee waiver within twenty (20) business days.

Sincerely,


/s/ *Larry Klayman*
Larry Klayman
Chairman & General Counsel
Freedom Watch, Inc.
2020 Pennsylvania Ave. Ste. 345
Washington, DC 20006

leklayman@gmail.com



NATIONAL SECURITY AGENCY
CENTRAL SECURITY SERVICE
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FOIA Case:  78689
8 August 2014

LARRY KLAYMAN
FREEDOM WATCH INC
2020 PENNSYLVANIA AVE NW STE 345
WASHINGTON DC  20006

Dear Mr. Klayman:

This responds to your Freedom of Information Act (FOIA) request of 21 July 2014, which was received by this office on 30 July 2014, for "All documents that refer or relate in any way to the deaths of the US military servicemen who were killed in a helicopter crash in Afghanistan on or about August 6, 2011 concerning a mission named Extortion 17 and any and all documents that refer or relate in any way to the Congressional hearing held by the Committee on Oversight & Government Reform on February 27, 2014." Your request listed 54 specific items that you are interested in.  Your request has been assigned Case Number 78689.  There is certain information relating to this processing about which the FOIA and applicable Department of Defense (DoD) and NSA/CSS regulations require we inform you.

For purposes of this request and based on the information you provided in your letter, you are considered an "all other" requester.  There are no assessable fees for this request, therefore, we did not address your request for a fee waiver.  In addition, since this is a final response, we have not addressed your request for expedited processing.  Your request has been processed under the provisions of the FOIA.

The National Security Agency/Central Security Service (NSA/CSS) is the nation's cryptologic organization, and we have a twofold mission.  Our Information Assurance mission is to provide solutions, products, and services to protect U.S. information infrastructures critical to national security interests.  In response to requirements set at the highest levels of government, our Signals Intelligence mission is to collect, process, and disseminate intelligence information from foreign signals for national foreign intelligence and counterintelligence purposes.

FOIA Case:  78689

Most of the information you request does not fall within this Agency's intelligence mission or Information Assurance mission, as it pertains mainly to Department of Defense activities relating to the shoot down of a US helicopter in Afghanistan.  Nevertheless, we conducted a search reasonably calculated to uncover any relevant documents, but did not locate any records responsive to your request.  Regarding item 48 of your request, since NSA was specifically named in that item, we did not consider it to be outside of the purview of this Agency.  We did not entirely understand what it was you were seeking, but we conducted a search reasonably calculated to uncover relevant documents, and we did not locate any responsive records.  Regarding item 39 of your request, the only record located was the letter you submitted for this request; thus, we are not providing it to you.

To the extent that your request may be seeking foreign intelligence information, items 18, 19, and 53 may potentially fall within the purview of this Agency.  In addition, if you had provided a list of names items 3 and 4, those items may also potentially fall within the purview of this Agency.  However, we have determined that the fact of the existence or non-existence of the materials you request in these five items is a currently and properly classified matter in accordance with Executive Order 13526, as set forth in Subparagraph (c) of Section 1.4.  Thus, your request is denied pursuant to the first exemption of the FOIA which provides that the FOIA does not apply to matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign relations and are, in fact properly classified pursuant to such Executive Order.

In addition, this Agency is authorized by various statutes to protect certain information concerning its activities.  The third exemption of the FOIA provides for the withholding of information specifically protected from disclosure by statute.  Thus, these five items listed in your request are also denied because the fact of the existence or non-existence of the information is exempted from disclosure pursuant to the third exemption.  The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 3024(i); and Section 6, Public Law 86-36 (50 U.S. Code 3605).

The Initial Denial Authority for NSA information is the Associate Director for Policy and Records, David J. Sherman.  Since your request has been denied, you are hereby advised of this Agency's appeal procedures.  Any person notified of an adverse determination may file an appeal to the NSA/CSS Freedom of Information Act Appeal Authority.  The appeal must be postmarked no later than 60 calendar days after the date of the initial denial.  The appeal shall be in writing addressed to the NSA/CSS FOIA Appeal Authority (DJ4), National Security Agency, 9800 Savage Road STE 6248, Fort George G. Meade,

FOIA Case:  78689

MD  20755-6248.  The appeal shall reference the initial denial of access and shall contain, in sufficient detail and particularity, the grounds upon which the requester believes release of the information is required.  The NSA/CSS FOIA Appeal Authority will endeavor to respond to the appeal within 20 working days after receipt, absent any unusual circumstances.

We contacted the Department of Defense (DoD) concerning your request, and they advised that your request falls under the purview of the Department of Defense.  Since the DoD FOIA office has received your request, they will process it and task the appropriate DoD components for action.

Sincerely,

PAMELA N. PHILLIPS
Chief
FOIA/PA Office

Central Intelligence Agency



Washington, D.C. 20505

7 August 2014

Mr. Larry Klayman
Chairman & General Counsel
Freedom Watch, Inc.
2020 Pennsylvania Avenue, Suite 345
Washington, DC  20006

Reference:  F-2014-02186

Dear Mr. Klayman:

   On 30 July 2014 the office of the Information and Privacy Coordinator received your 21 July 2014 Freedom of Information Act (FOIA) request, including 54 items, for *(i) documents that refer or relate in any way to the deaths of the U.S. military servicemen named therein who were killed in a helicopter crash in Afghanistan on or about 6 August 2011 concerning a mission named Extortion 17 and (ii) documents that refer or relate in any way to the Congressional hearing held by the House Committee on Oversight & Government reform on 27 February 2014*

   You have requested expedited processing.  We handle all requests in the order we receive them; that is, "first-in, first-out."  We make exceptions to this rule only when a requester establishes a compelling need in accordance with the FOIA, 5 U.S.C. § 552, as amended.  Your request does not demonstrate a "compelling need" and, therefore, we deny your request for expedited processing.

   Our officers will review it and will advise you should they encounter any problems or if they cannot begin the search without additional information. We have assigned your request the reference number above.  Please use this number when corresponding so that we can identify it easily.

                          Sincerely,

                          *Michele Meeks*

                          Michele Meeks
                          Information and Privacy Coordinator



# Fwd: FW: OSD FOIA 14-F-1197

2 messages

**Larry Klayman** <leklayman@gmail.com>
To: Dina James <daj142182@gmail.com>

Mon, Aug 18, 2014 at 9:41 AM

---------- Forwarded message ----------
From: "Spear, Danaeka L CIV WHS ESD (US)" <danaeka.l.spear.civ@mail.mil>
Date: Aug 18, 2014 10:44 AM
Subject: FW: OSD FOIA 14-F-1197
To: "leklayman@gmail.com" <leklayman@gmail.com>
Cc: "Council, Suzanne F CIV WHS ESD (US)" <suzanne.f.council.civ@mail.mil>

Mr. Larry Klayman
Freedom Watch
2020 Pennsylvania Avenue, Ste 345
Washington, DC 20006

Sent by electronic mail:  leklayman@gmail.com

Mr. Klayman,

This is in response to your Freedom of Information Act (FOIA) request for all documents in reference to Extortion 17 and other records.  Your request was received in this office on June 29, 2014 and assigned FOIA case number 14-F-1197.

After reviewing your request, we have determined that items 1- 17 of your request are duplicative of requests already fulfilled and that are in litigation, therefore this office will not response to these items while processing this request.

In regards to items 20 thru 35, we interpret that you are seeking records concerning Gerry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations and Low Intensity Conflict and the Extortion 17 Congressional hearing which was took place on February 27, 2014.  This office will conduct a search accordingly.

For items 36 - 38 and 40-41, this office will process these items as they concern the Office of the Secretary of Defense (OSD) and the Joint Chief of Staff.

For item 39, this office will only search the OSD/JS FOIA office for records concerning Larry Klayman, Esq., Freedom Watch, Inc. and Extortion 17.

For items 50-52, we will process these portions of your request as requested.

Please be aware that this FOIA office only processes requests for the Office of the Secretary of Defense (OSD) and the Joint Chiefs of Staff (JS).  There is not a central FOIA processing point for the entire Department of Defense (DoD) records management, but is, instead, delegated to those officials of the military services and various DoD components that generate and/or maintain the records being sought.  The addresses can be found on our OSD/JS FOIA Requester Service Center Website at:  http://www.dod.mil/pubs/foi/milservices.html.  The United State Special Command (USSOCOM), which
operates its own FOIA office, would have cognizance over the information you have requested in items 42-46.  Please submit your request for these items directly to USSOCOM at the following address:

SOCS-SJS-I/FOIA Service Center

7701 Tampa Point Boulevard
MacDill AFB, FL 33621-5323
www.socom.mil/foia

According to the FOIA's legislative history, a description would be sufficient if it enabled a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort, and reasonably describes records if the agency is able to determine "precisely" what records are being requested.

Courts have identified at least three (3) ways in which a FOIA request can fail to reasonably describe the records sought:

1) the description may be too vague to allow the agency to determine precisely what records are being requested; an agency is not required to have clairvoyant capabilities to discover the requestor's need;

2) broad sweeping requests lacking specificity are insufficient; and,

3) even where a request sufficiently describes the records sought, an agency is not required to comply with a request so broad that it would impose an unreasonable burden upon the agency. An agency need not honor a request that requires an unreasonably burdensome search. The "reasonably describes" requirement exists because the FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters. As such, it is the requester's responsibility to frame requests with sufficient particularity to ensure the searches are not unreasonably burdensome, and to enable the searching agency to determine precisely what records are being requested.

In recent court action, James Madison Project (JMP) vs. CIA, the court referred to the request as "too broad because the term "pertaining to" is synonymous to the term "relating to," which generally indicates an overbroad request. A request for "all documents 'relating to' a subject is usually subject to criticism as overbroad since life, like law, is a 'seamless web,' and all documents 'relate' to others in some remote fashion." Massachusetts v. U.S. Dep't of Health & Human Servs., 727 F. Supp. 35, 36 n.2 (D. Mass. 1989). Such a request "unfairly places the onus of non-production on the recipient of the request and not where it belongs - upon the person who drafted such a sloppy request."

In court action, Freedom Watch, Inc. v. Dep't of State, No. 12-314, 2013 WL 692770 (D.D.C. Feb. 27, 2013), the court agreed that "[t]he requests failed to identify the documents sought with any modicum of specificity and were thus fatally overbroad and burdensome." The court cited several examples of how broadly the requests were worded. For example, the court noted that one portion of the request "sought 'all' records that 'refer or relate to . . . [a]ny and all communications."

As you may or may not know, OSD/JS is not an intelligence agency. For items 47-49 and 53 and 54, we need your help to provide the name of the OSD/JS office(s) which you believe would hold records responsive to your request. Please narrow these items to a particular subject or issue concerning the Extortion 17 incident in which you are interested, that would assist the office searching to accurately locate any documents that may exist and furnish them to you in a reasonable timeframe. A timeframe for these items would greatly assist as well.

As it stands, these items are not reasonably described and too burdensome. If we have not heard from you by close of business September 5, 2014, we will believe that you are no longer interested in these items and will only process the items discussed above.

Regarding your request for expedited processing, you are asking this Office to place your request ahead of all other requests received. This Office, however, receives many FOIA requests. According to DoD Regulation 5400.7-R, in order to qualify for expedited processing, a requester must demonstrate a "compelling need" for the information, i.e., that failure to obtain the records on an expedited basis reasonably could be expected to pose an imminent threat to the life or physical safety of an individual, or an imminent loss of substantial due process rights, or humanitarian need.

Expedited processing may be granted when the requester demonstrates a compelling need for the information and shows that the information has a particular value that would be lost if not processed on an expedited basis. A key word here is "demonstrates." It is, therefore, incumbent upon you to demonstrate that the requested records will serve an urgency purpose, and that they also will be meaningful in the sense that they will provide for a greater

understanding of actual or alleged federal government activity on the part of the public-at-large than that which existed before such information was disseminated. Consequently, it must be clearly demonstrated that such information has a particular value that will be lost if not disseminated quickly. After careful consideration of your request, this Office finds that you have not clearly demonstrated how the information will lose its value if not processed on an expedited basis. For these reasons, your request for expedited processing is denied.

With regard to your request for a waiver of any applicable fees, a fee waiver is appropriate when "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(iii). In making a determination, six factors are considered as to whether your request satisfies this statutory standard: (1) whether the subject of the requested records concerns the operations or activities of the government; (2) whether the disclosure is likely to contribute to an understanding of government operation or activities; (3) whether disclosure of the requested information will contribute to the understanding of the general public; (4) whether the disclosure is likely to contribute significantly to public understanding of government operations an activities; (5) whether the requester has a commercial interest that would be furthered by the requested disclosure; and, (6) whether any such commercial interest outweighs the public interest in disclosure.

While the requested information does concern the operation and activities of the government and does not appear to be intended for a commercial interest, it is not clear how the responsive documents - should they exist - would significantly contribute to the public's understanding of the operations and activities of the government. After carefully reviewing your request, I am denying your fee waiver request because the information stated does not support how the documents will significantly contribute to the public's increased understanding of the operations and activities of the government.

I have determined that you should be placed in the "Other" category for fee purposes as you have indicated that you do not seek access to these records for commercial purposes. The "Other" fee category affords you two hours of search time and 100 pages of duplication free of charge. As you did not provide any willingness to pay search will be halted after your two free hours have been expended. If you wish to add a willingness to pay please advise us with your return of narrowed request.

If you are not satisfied with this action, you may submit an administrative appeal to James Hogan, Defense Freedom of Information Policy Office, 1155 Defense Pentagon, Washington, DC 20301-1155. Your appeal should be postmarked within 60 calendar days of the date of this letter, should cite to case number 14-F-1197, and should be clearly marked "Freedom of Information Act Appeal."

Thank you,


Danaeka Spear
Senior Advisor
Office of the Secretary of Defense and Joint Staff
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC  20301-1155



▢ smime.p7s
   6K

---

**Larry Klayman** <leklayman@gmail.com>                                        Mon, Aug 18, 2014 at 4:57 PM
To: "Spear, Danaeka L CIV WHS ESD (US)" <danaeka.l.spear.civ@mail.mil>
Cc: "Council, Suzanne F CIV WHS ESD (US)" <suzanne.f.council.civ@mail.mil>, Dina James <daj142182@gmail.com>

 **FREEDOM WATCH**

▶ www.FreedomWatchUSA.org

▶ **World Headquarters** 2020 Pennsylvania Avenue, N.W., Suite 345, Washington, DC 20006-1811   ▶ (310) 595-0800   ▶ leklayman@gmail.com

By U.S. Mail

August 21, 2014

Ms. Pamela N. Phillips
Chief
FOIA/PA Office
National Security Agency
Central Security Service
Fort George G. Meade, Maryland 20755-6000

FOIA Case: 78689

Ms. Phillips:

This is in response to your letter dated August 8, 2014, regarding a Freedom of Information Act (FOIA) request received by your office July 30, 2014 from requester, Freedom Watch, Inc.

Your response to Freedom Watch's FOIA request is both disingenuous and obstructionist. Thus, any effort on Freedom Watch's part to exhaust administrative remedies would be futile. A plaintiff need not "exhaust administrative remedies that would be futile" to exhaust. *Singh v. Ashcroft*, 362 F.3d 1164, 1169 (9th Cir. 2004). It is apparent from the systematic and unreasonable summary denial of Plaintiff's FOIA request that you are unwilling to disclose even a portion of the documents and other information that Plaintiff has requested. *See also Sokha Sun v. Ashcroft*, 370 F.3d 932, 943 (9th Cir. 2004) ("Where the agency's position on the question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be, such recourse would be futile and is not required.").

Specifically, as I have plead in *Klayman v. Obama et al.* (13-cv-851, 13-cv-881, 14-cv-00092) and as the United States District Court for the District of Columbia has recognized in granting a preliminary injunction, the National Security Agency has access to virtually all telephonic, Internet and social media communications and information of the requesters. For the agency to claim that it does not, defies and contradicts forced admissions of the Director of National Intelligence, James Clapper, disclosures of whistleblowers such as Edward Snowden, and other credible and verifiable information in the public domain.

Producing the information that has been requested would not compromise national security but would, in fact, further it. The public and families of the victims of Extortion 17 have a right to know the causes and reasons for the deaths of members of Navy SEAL Team VI, special

1

operators and other U.S. servicemen, their sons and others, given that young Americans are being asked to risk their lives in wars that the American public has learned are not only politically motivated and fruitless, but also dismal failures.

If any documents are deemed to be classified or they may compromise national security, they should have been identified pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974). Indeed, after we file suit, you will have an opportunity to provide these documents in camera to the court to determine whether they are as the agency represents. The American public knows that your agency and various national security officials have repeatedly not been truthful to Congress, courts and the American people about the surveillance by the National Security Agency of nearly all Americans and its access to the requested documents and information.

In short, your response of August 8, 2014 underscores that the agency continues to obstruct and flout legal process in contravention of the laws of the United States and the best interests of its' citizens.

Please govern yourselves accordingly.

Sincerely,

Larry Klayman, Esq.
Chairman and General Counsel
Freedom Watch, Inc.



# FREEDOM WATCH

▶ www.FreedomWatchUSA.org

▶ **World Headquarters** 2020 Pennsylvania Avenue, N.W., Suite 345, Washington, DC 20006-1811   ▶ (310) 595-0800   ▶ leklayman@gmail.com

By U.S. Mail

August 21, 2014

Ms. Michele Meeks
Central Intelligence Agency
Information and Privacy Coordinator
Washington, D.C. 20505

Reference: F-2014-02186

Ms. Meeks:

This is in response to your letter dated August 7, 2014, regarding a Freedom of Information Act (FOIA) request received by your office July 30, 2014.

You deny the request for expedited processing on the grounds that "[W]e handle all requests in the order we receive them; that is, "first-in, first-out. We make exceptions to this rule only when a requester establishes a compelling need in accordance with FOIA, 5 U.S.C. § 552, as amended. Your request does not demonstrate a 'compelling need' and, therefore, we deny your request for expedited processing." It is a shock to any American with a conscience that the Central Intelligence Agency would not consider the information and potential reasons behind the deaths of 30 U.S. servicemen, the largest loss of life in a single incident during the Afghan war, a "compelling need." Failure to obtain the records on an expedited basis could result in an imminent threat to the life or physical safety of all U.S. military who are serving in Afghanistan and elsewhere today. The information obtained will be disseminated quickly and will ultimately shed light on why and how Extortion 17 was shot-down, thereby providing current servicemen the opportunity to avoid a similar attack and for remedial actions to be taken by our government. For example, the recent death of Maj. Gen. Harold J. Greene, killed by our so-called allies on a green-on-blue attack, perhaps could have been prevented if the documents requested were produced and appropriate persons and authorities were fully informed.

It is clear that you are attempting to stonewall and obstruct a critically important FOIA request and are delaying this legal and specifically-stated FOIA request. As a result of your bad faith and obstructionist tactics, an administrative appeal would be futile and for this reason we will proceed immediately to litigation. A plaintiff need not "exhaust administrative remedies that would be futile" to exhaust. *Singh v. Ashcroft*, 362 F.3d 1164, 1169 (9th Cir. 2004).

In sum, your letter dated August 7, 2014 is simply a further attempt to significantly delay if not totally stonewall and obstruct production and dissemination of the requested information. This agency has access to the requested documents and information and simply refuses to produce this to us.

Please govern yourselves accordingly.

Sincerely

Larry Klayman, Esq.
Chairman and General Counsel
Freedom Watch, Inc.



**FREEDOM WATCH**

► www.FreedomWatchUSA.org

► **World Headquarters** 2020 Pennsylvania Avenue, N.W., Suite 345, Washington, DC 20006-1811   ► (310) 595-0800   ► leklayman@gmail.com

By Electronic Mail and U.S. Mail

August 18, 2014

Ms. Danaeka Spear
Senior Advisor
Office of the Secretary of Defense and Joint Staff
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155

Sent by U.S. mail and electronic mail: danaeka.l.spear.civ@mail.mil;
suzanne.f.council.civ@mail.mil

Ms. Spear:

This letter is in response to your email dated August 18, 2014, 10:44 AM, Subject OSD FOIA
14-F-1197 regarding a Freedom of Information Act (FOIA) request received by your office July
29, 2014.

**First**, you claim that items 1-17 of the request "are duplicative of requests already fulfilled and
that are in litigation, therefore this office will not response [sic] to these items while processing
this request." This determination is factually and legally wrong because the first FOIA request
was filed on August 1, 2013 – over a year ago – and the new FOIA request pertains documents
and things that were generated after that, up to and including the present. In short, relevant
documents and things to the most recent FOIA request must have been generated in the past
year, particularly in light of the Congressional hearing that took place February 27, 2014, and
other subsequent events such as a meeting arranged by Congressman Bob Brady by and between
one of our clients, Charles Strange, and Garry Reid, as just one example. Indeed, in *Wrenn v.
Shalala*, No. 94-5198, 1995 WL 225234 at *1 (D.C. Cir. Mar. 8, 1995), the court reversed
dismissal on "claims that were not and could not have been litigated in that prior action." In
addition, your theory of what is in effect res judicata does not apply where there has been a
change in the factual circumstances pertinent to the action. *See, e.g., Negley v. FBI*, 169 F. App'x
591, 594 (D.C. Cir. 2006) (holding that "FOIA does not limit a party to a single request, and
because the records maintained by an FBI office may change over time, a renewal of a previous
request inevitably raises new factual questions."); *ACLU v. DOJ*, 321 F. Supp. 2d 24, 34 (D.D.C.
2004) (finding res judicata inapplicable where changed circumstances, namely, Attorney
General's decision to declassify records in question, altered legal issues surrounding plaintiff's
FOIA request).

1

Here, it is inconceivable that new documents have not been generated in the past year regarding the shoot-down of Extortion 17 because of the Congressional hearing, press reports, a meeting with Charles Strange, Congressman Bob Brady and Garry Reid in April of 2014, new information provided at the hearing and other publicity that comes forth virtually everyday regarding the tragic deaths of the 30 U.S. servicemen.

**Second**, you state, "[f]or items 47-49 and 53 and 54, we need your help to provide the name of the OSD/JS office(s) which you believe would hold records responsive to your request." Unfortunately, this is a Catch-22. You and your Office hold all the cards. It is not our job to search these records; it is yours, as the documents and things are in your custody and control and you know full well where these records are located. Remember, what we are talking about, among other things, are the deaths of members of SEAL Team VI and other special operators, the nation's best and brightest, some of whom participated in the raid which killed Osama Bin Laden.

**Third**, you deny the request for expedited processing on the grounds that we are "asking this Office to place your request ahead of all other requests received." This is simply false. Freedom Watch has demonstrated an immediate "compelling need" for the information. As an example, you cite instances where "failure to obtain the records on an expedited basis reasonably could be expected to pose an imminent threat to the life or physical safety of an individual, or an imminent loss of substantial due process rights, or humanitarian need."

It is a shock to any American with a conscience that your Office would not consider the information and potential reasons behind the deaths of 30 U.S. servicemen, the largest loss of life in a single incident during the Afghan war, a "compelling need." Failure to obtain the records on an expedited basis could result in an imminent threat to the life or physical safety of all U.S. military who are serving in Afghanistan and elsewhere today. The information obtained will be disseminated quickly and will ultimately shed light on why and how Extortion 17 was shot-down, thereby providing current servicemen the opportunity to avoid a similar attack and for remedial actions to be taken by our government. For example, the recent death of Maj. Gen. Harold J. Greene, killed by our so-called allies on a green-on-blue attack, perhaps could have been prevented if the documents requested were produced and appropriate persons and authorities were fully informed.

**Fourth**, you deny the fee waiver on the grounds that "the information stated does not support how the documents will significantly contribute to the public's increased understanding of the operations and activities of the government." Yet, U.S.C. § 552(a)(4)(iii) states that a fee waiver is appropriate when "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government and is not primarily in the commercial interest of the requester." Six factors are considered in making this determination: (1) whether the subject of the requested records concerns the operations or activities of the government; (2) whether the disclosure is likely to contribute to an understanding of government operation or activities; (3) whether disclosure of the requested information will contribute to the understanding of the general public; (4) whether the disclosure is likely to contribute significantly to public understanding of government

operations and activities; (5) whether the requester has a commercial interest that would be furthered by the requested disclosure; and (6) whether any such commercial interest outweighs the public interest in disclosure.

Freedom Watch, Inc. has no commercial interest that would be furthered by the requested disclosure. Most importantly, however, is that the responsive documents – and they do exist – would contribute to the public's understanding of how our government and Afghan "allies" treat U.S. servicemen. Our military personnel are dying daily and the requested information could help stop the green-on-blue attacks by the Afghan military forces as well as provide current military servicemen critical information on how to save themselves and their allies. This request is of *extreme* national importance and the information obtained will be disseminated quickly to the public: that is our modus operandi, as you know well.

In addition, new and highly relevant information must have been generated from the Congressional hearing held February 27, 2014. As specifically stated, items in the FOIA request pertain to information regarding communications between your Office and the Committee on Government Oversight and Reform. For Freedom Watch, Inc. and its clients, it is time this information sought is produced both for the well-being and emotional state of the families of those fallen and the current serving U.S. military. The cover-up and circumstances of the downing of Extortion 17 have been covered up long enough and your email dated August 18, 2014 is another attempt to obfuscate the truth.

It is clear that you are attempting to stonewall and obstruct a critically important FOIA request and are delaying this legal and specifically-stated FOIA request. As a result of your bad faith and obstructionist tactics, an administrative appeal would be futile and for this reason we will proceed immediately to litigation. A plaintiff need not "exhaust administrative remedies that would be futile" to exhaust. *Singh v. Ashcroft*, 362 F.3d 1164, 1169 (9th Cir. 2004). It is apparent from the systematic and unreasonable summary denial of Plaintiff's FOIA request that you are unwilling to disclose even a portion of the documents and other information that Plaintiff has requested. *See also Sokha Sun v. Ashcroft*, 370 F.3d 932, 943 (9th Cir. 2004) ("where the agency's position on the question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be, such recourse would be futile and is not required").

In sum, your email of August 18, 2014 is simply a further attempt to significantly delay if not totally stonewall and obstruct production and dissemination of the requested information, as well as to make the production of these documents cost prohibitive to Freedom Watch, Inc. and its clients, who have very limited financial means.

Please govern yourselves accordingly.

Sincerely,

Larry Klayman, Esq.
Chairman and General Counsel
Freedom Watch, Inc.