# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **FREEDOM WATCH, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 14-1431 (RJL)** |
| | ) | |
| **NATIONAL SECURITY AGENCY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**FILED**

JUL - 7 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

(July ___ 6 , 2016) [Dkt. # 32]

Plaintiff Freedom Watch, Inc. brought this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, seeking information related to the August 6, 2011 shoot-down of a military helicopter in Afghanistan. Currently before the Court is defendants' Motion for Summary Judgment. *See* Defs.' Mot. for Summ. J. [Dkt. # 32]. Having considered the parties' pleadings, relevant law, and the entire record of this case, the Court GRANTS defendants' Motion for Summary Judgment.

## BACKGROUND

On July 21, 2014, plaintiff Freedom Watch sent a multi-part FOIA request to the defendants, Central Intelligence Agency ("CIA") and Department of Defense ("DoD"). Wilson Decl. ("CIA Decl.") ¶ 5 [Dkt. # 32-1]; Herrington Decl. ("DoD Decl.") ¶ 3 [Dkt. # 32-2].[1] The FOIA request sought the production of agency records relating to an

---

[1] Plaintiff also submitted the FOIA request to former defendant National Security Agency ("NSA"). Compl. ¶ 5. The NSA is no longer a party since I granted its motion to dismiss based on the plaintiff's

August 2011 CH-47 Chinook helicopter crash in Afghanistan that resulted in the deaths of 38 individuals. On August 21, 2014, Freedom Watch filed this lawsuit against the defendants seeking to compel disclosure of the requested records. *See generally* Compl. [Dkt. # 1]. Since then, CIA and DoD have conducted searches for responsive records and filed a series of status reports apprising the plaintiff and the Court of the production. *See, e.g.*, Status Report, May 8, 2015 ("First Status Report") [Dkt. # 25]; Status Report, Nov. 11, 2015 ("Second Status Report") [Dkt. # 31]. On May 8, 2015 defendants reported they had located several dozen responsive documents to be reviewed, *see* First Status Report, and on November 11, 2015 defendants reported completion of the production of responsive, non-exempt materials, *see* Second Status Report. CIA and DoD detailed their search for responsive records and exemptions claimed in two respective declarations: one from Mary E. Wilson, Acting Information Review Officer for the Litigation Information Review Office at the CIA, *see* CIA Decl., and the other from Mark Herrington, Associate Deputy General Counsel in the Office of General Counsel of DoD, *see* DoD Decl.

In Ms. Wilson's declaration she avers that CIA conducted a search for responsive records in consultation with Agency officials knowledgeable about the Agency's record-keeping practices to ascertain all locations reasonably likely to possess responsive records. CIA Decl. ¶ 9. By letter dated August 21, 2014, CIA advised the plaintiff that the information sought "would fall under the auspices of the Department of Defense." *Id.* ¶ 6. On May 12, 2015, CIA produced two redacted responsive documents. *Id.* ¶ 7. On

---

failure to exhaust administrative remedies. *See* Mem. Op., Sept. 30, 2015 [Dkt. # 29]. When I refer to the defendants, I refer to remaining defendants CIA and DoD.

January 12, 2016, after re-review and reprocessing, CIA released a revised version of one of these documents, numbered C06299693. *Id.* ¶ 8.

As explained in Mr. Herrington's declaration, DoD reviewed the various parts of plaintiff's FOIA request to identify the offices likely to have responsive materials. *See* DoD Decl. ¶¶ 6-9. Working with FOIA staff well-versed in the structure and responsibilities of offices, DoD searched the office of Legislative Affairs, *id.* ¶ 7, and the office of the Assistant Secretary of Defense for Special Operations & Low Intensity Conflict, *id.* ¶ 8, and tasked the Enterprise IT Services Directorate and the Defense Information Systems Agency to conduct further electronic searches of the records of Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low Intensity Conflict, *id.* ¶ 9. On March 31, 2015, DoD released in full two documents, totaling 2 pages, of responsive, non-exempt information. *Id.* ¶ 10. On November 15, 2015, DoD released an additional 98 responsive documents, totaling 531 pages, with exempt information redacted on the released pages. *Id.* ¶ 11.

## STANDARD OF REVIEW

FOIA cases are typically resolved on motions for summary judgment. *See Petit-Frere v. U.S. Atty's Office for the S. Dist. of Flor.,* 800 F. Supp. 2d 276, 279 (D.D.C. 2011) (citations omitted), *aff'd per curiam,* No. 11-5285, 2012 WL 4774807, at *1 (D.C. Cir. Sept. 19, 2012). A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the FOIA context, agencies may meet their burden solely on the basis of affidavits or declarations, *see Valencia-Lucena v. U.S.*

3

*Coast Guard,* 180 F.3d 321, 326 (D.C. Cir. 1999), as long as they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld . . . agency records." *Span v. Dep't of Justice,* 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (internal quotation marks omitted).

## ANALYSIS

I.   **CIA's and DoD's Searches for Responsive Records Were Adequate.**

I begin by addressing the adequacy of CIA's and DoD's searches for records responsive to plaintiff's FOIA requests. "It is elementary that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C. Cir. 1990) (footnotes, brackets, and internal quotation marks omitted). Unfortunately for plaintiff, I conclude that CIA's and DoD's searches were appropriate.

Defendants have demonstrated that they met their burden through the "relatively detailed and non-conclusory" affidavits of agency officials. *See Mobley v. CIA*, 806 F.3d 568, 580-81 (D.C. Cir. 2015). Mary E. Wilson, the Acting Information Review Officer

for CIA's Litigation Information Review Office, explained that the CIA "consulted Agency officials with knowledge of the Agency's record-keeping practices to ascertain all locations reasonably likely to possess responsive records," searched numerous locations for both paper and electronic files, and found the documents ultimately produced to plaintiff. *See* CIA Decl. ¶¶ 9-13. Mark Herrington, the Associate Deputy General Counsel in DoD's Office of General Counsel responsible for overseeing FOIA litigation, described in detail how DoD identified the offices likely to have responsive records, the means used to search therein, and how they searched for both electronic and paper records. *See* DoD Decl. ¶¶ 6-9. He also explained how DoD searched the records of the office and individual at the center of plaintiff's FOIA requests: the Office of the Assistant Secretary of Defense for Special Operations & Low Intensity Conflict, and Garry Reid, Principal Deputy Assistant Secretary of Defense for Special Operations & Low Intensity Conflict. *Id.* Ms. Wilson and Mr. Herrington described how the searches located hundreds of pages of responsive records, contained within over 100 documents, ultimately produced in full or in part absent information withheld as exempt under FOIA. *See* DoD Decl. ¶¶ 10-11; CIA Decl. ¶ 8.

Plaintiff wholly fails to present any evidence rebutting the agency's showing of a good faith search. Rather than provide any facts that create a genuine issue regarding the adequacy of the search, plaintiff asserts without support that it is "common sense that documents clearly exist" beyond those produced. Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") 20 [Dkt. # 35]. It is well established, however, that "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the

appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).   Moreover,  an "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam).

Plaintiff's only argument regarding the search methods employed—that defendants should not have relied on "keyword searches," Pl.'s Opp'n 22—is unsupported and unpersuasive.  In another recent case involving this plaintiff, the D.C. Circuit explained, "FOIA expressly permit[s] automated searches, *see* 5 U.S.C. § 552(a)(3)(D) (explaining that 'search' means to review, manually or by automated means)[.]" *Freedom Watch v. Nat'l Sec. Agency*, 783 F.3d 1340, 1345 (D.C. Cir. 2015). Indeed, agencies routinely rely upon keyword searches to locate responsive electronic documents.  *See, e.g.*, *Mobley*, 806 F.3d at 581; *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Moreover, the searches here encompassed far more than inputting keywords.  Far from "avoid[ing] interacting with human beings," Pl.'s Opp'n 22, defendants spoke with individuals familiar with the offices' records systems, and searched paper records as well.  *See* CIA Decl. ¶¶ 9-12; DoD Decl. ¶¶ 6, 8.  In the above-referenced case brought by Freedom Watch, our Circuit Court held that such manual

searches, in conjunction with keyword searches, suffice to meet the agency's burden.

*Freedom Watch v. Nat'l Sec. Agency*, 783 F.3d at 1345.  The same holds true here.

Lastly, plaintiff effectively acknowledges that the agencies may have satisfied

their FOIA obligations under controlling case law, but invites the Court to "modify such

recent precedents and return to a faithful interpretation" of FOIA.  Pl.'s Opp'n 20.

Unfortunately for plaintiff, this is an invitation I neither can, nor desire, to accept.

## II.      CIA and DoD Properly Invoked FOIA Exemptions.

Next I turn to the propriety of defendants' decision to withhold documents

pursuant to FOIA Exemptions 1, 3, 5, and 6.  Under FOIA agencies must produce

requested information unless it falls into one of nine statutory exemptions.  *See* 5 U.S.C.

§ 552(b).  When documents are withheld, the agency bears the burden of demonstrating

that its withholding was proper.  *Id.* § 552(a)(4)(B).  Agencies often use a *Vaughn* index

to meet their burden, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), but a court

may also award summary judgment on the basis of information provided in affidavits or

declarations if those submissions are sufficiently detailed and not controverted by other

evidence or bad faith, *see Reliant Energy Power Generation, Inc. v. Fed. Energy*

*Regulatory Comm'n*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007).

Here, the uncontroverted declarations sufficiently demonstrate that the agencies

properly withheld exempt material pursuant to Exemptions 1, 3, 5, and 6.  *See* CIA Decl.

¶¶ 14-16; DoD Decl. ¶¶ 14-24.  Under Exemption 1, FOIA does not require the

production of records that are: "(A) specifically authorized under criteria established by

an Executive order to be kept secret in the interest of national defense or foreign policy,

and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). A Court must give "substantial weight" to agency affidavits detailing classified materials, *King v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987), and defer to the expertise of agencies involving national security and foreign policy, *see Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999).

An agency can withhold records pursuant to Exemption 1 "if it complies with classification procedures established by the relevant executive order and withholds only such material as conforms to the order's substantive criteria for classification." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 214 (D.C. Cir. 1987). DoD has established it has done just that. Mr. Herrington explains that an Original Classification Authority ("OCA"), as authorized by Section 1.1 of Executive Order ("EO") 13526, has "found information was properly classified under either section 1.4(a), which permits classification of military plans and operations, or 1.4(c), which permits classification of information pertaining to, reflecting, or constituting" intelligence-related matters. DoD Decl. ¶ 23. Moreover, all of the Exemption 1 redacted material "is classified at the SECRET level, and so its release would . . . reasonably be expected to cause serious damage to national security," consistent with Section 1.2 of EO 13526. *Id.* ¶ 24. Thus, DoD properly withheld this small amount of material pursuant to Exemption 1.

CIA and DoD properly invoked Exemption 3, under which information may be withheld pursuant to a statute that "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3)(A)(i). The "sole issue for decision" thereunder "is the existence of a relevant statute and the

inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978). As with Exemption 1, "substantial weight [is] owed to agency explanations in the context of national security" to qualify for Exemption 3 withholding. *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 840 (D.C. Cir. 2001).

Here, the defendants properly withheld names and contact information pursuant to three qualifying statutes: 10 U.S.C. § 130(B), 10 U.S.C. § 424, and 50 U.S.C. § 3507. Section 130(B) authorizes withholding "personally identifying information regarding . . . any member of the armed forces assigned to an overseas unit, a sensitive unit, or a routinely deployable unit." 10 U.S.C. § 130(B)(a)(1). Section 424 authorizes withholding of sensitive information related to, *inter alia*, the Defense Intelligence Agency ("DIA") and the "number of persons employed by or assigned or detailed to [DIA] or [their] name[s] [or] official title[s] . . . ." 10 U.S.C. § 424(a)(2). DoD has sufficiently established how its limited Exemption 3 withholdings are properly the subject of these two statutes. Mr. Herrington explains that Exemption 3 was applied only to withhold certain "names or contact information"—as is clear from the context of the redactions—and only from those who "serve in sensitive, overseas, or routinely deployable units" or those who "work for DIA." DoD Decl. ¶ 16. As for the third qualifying statute, Section 6 of the CIA Act of 1949 as amended exempts the CIA from "any other law[s] which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the agency . . . ." 50 U.S.C. § 3507. In her unrebutted declaration, Ms. Wilson explains the withheld material constitutes "the names and identifying information of CIA employees"

in addition to information that potentially reveals authorship of a document "resid[ing] on the CIA's internal network." CIA Decl. ¶ 16; *see Baker v. CIA*, 580 F.2d 664, 669 (D.C. Cir. 1978) (no "independent showing of a nexus between the withholding of personnel data and the security of foreign intelligence activities or the protection of intelligence sources and methods" required to properly withhold such Exemption 3 information). These withholdings meet the Exemption 3 standard.

DoD properly invoked Exemption 5 to protect from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 protects records if they would "normally [be] privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). This protection includes the deliberative process privilege invoked here by DoD for its Exemption 5 withholdings. The deliberative process privilege protects intra- or inter-agency documents that are "predecisional and deliberative" by shielding from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008). A document is "predecisional" if "it was generated before the adoption of an agency policy," and "deliberative" if "it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Here, all material withheld pursuant to Exemption 5 involves DoD's decision-making about upcoming Congressional testimony by Garry Reid, a Principal Deputy

Assistant Secretary of Defense, and U.S. Air Force Colonel John Devillier, and fits comfortably within the exemption. *See* DoD Decl. ¶¶ 5, 18-21. DoD withheld as deliberative portions of three emails regarding Mr. Reid's anticipated testimony, as the release thereof would compromise "the ability of DoD personnel to provide candid advice to officials in anticipation of their testimony . . . ." *Id.* ¶ 20. "Internal communications regarding how to respond to media and Congressional inquiries have repeatedly been held to be protected under the deliberative process privilege[,]" and these withholdings are no different. *Judicial Watch, Inc. v. CFPB*, 60 F. Supp. 3d 1, 9 (D.D.C. 2014). DoD also withheld draft versions of testimony by Colonel Devillier and Mr. Reid, along with comments and recommendations regarding Mr. Reid's testimony, while providing plaintiff with the final versions of their testimony. DoD Decl. ¶ 18. These drafts of congressional testimony were also properly withheld as deliberative. *See People for the Am. Way Fed'n v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007) (noting "drafts are commonly found exempt under the deliberative process exemption").

DoD properly withheld as well personal identifying information pursuant to Exemption 6. This exemption protects from disclosure information about individuals in "personnel and medical and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 requires a court to balance the privacy interest served by withholding information and the public interest, if any, that would be advanced by disclosing it. *Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Hous. & Urban Dev.*, 936 F.2d 1300, 1302 (D.C. Cir. 1991). The requester bears the burden to articulate

a significant public interest sufficient to outweigh the privacy interest. *See Nat'l Archives and Records Admin. v. Favish,* 541 U.S. 157, 172 (2004); *see also Smith v. Dep't of Labor*, 798 F. Supp. 2d 274, 285 (D.D.C. 2011).

DoD's unrebutted Exemption 6 argument prevails. Our Circuit Court has recognized that "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989). Here, the Exemption 6 withholdings of such personal identifying information are relatively narrow, as they are limited to the names and contact information of lower-ranking military and civilian personnel, and do not extend to their titles, the higher-level officials or personnel with whom they communicated, or the substantive information in the documents in which their names appear. *See* DoD Decl. ¶ 14 ("DoD has a policy . . . to withhold personally identifying information of those members of DoD who are at the military rank of Colonel or below and at the rank of GS-15 or below."). Given plaintiff's failure to present any countervailing public interest in the release of the names and contact information of these lower-level officials, the unrebutted substantial privacy interests identified by DoD easily suffice to support its Exemption 6 withholdings.

## III.   CIA and DoD Released All Reasonably Segregable Material.

I turn now to the issue of segregability. If a record contains some information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S.*

12

*Customs Serv.,* 177 F.3d 1022, 1026-27 (D.C. Cir. 1999). A court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)). A court, however, "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008). Moreover, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (citation omitted).

Here, defendants' declarations and the limited and precise nature of the withholdings sufficiently demonstrate CIA and DoD released all reasonably segregable material. *See Juarez*, 518 F.3d at 61. In Mr. Herrington's declaration he explains that DoD "carefully reviewed" all responsive documents and "determined that no segregation of meaningful information in the withheld documents can be made" beyond the redactions made. DoD Decl. ¶ 25. Similarly, in CIA's "page-by-page, line-by-line review" of responsive documents, it determined that "no additional segregable, non-exempt CIA information . . . can be released." CIA Decl. ¶ 17. Indeed, the limited nature of CIA's withholdings buttresses the conclusion that all segregable, non-exempt information was released. *See id.* As to DoD, the sampling of documents attached as exhibits to Mr. Herrington's declaration underscore the best efforts used to redact narrowly and only where specific information qualifies for withholding under

Exemptions 1, 5, and 6.  *See* DoD Decl. Exs. 2, 3, 4 (redacting narrowly at the paragraph, sentence, and even phrase level); *see also Boehm v. FBI*, 948 F. Supp. 2d 9, 38 (D.D.C. 2013) (relying on sample of responsive documents to conclude agency met segregabilty obligations).

## IV.    No Discovery or *In Camera* Review Is Appropriate.

Plaintiff has failed to identify any basis for discovery in this lawsuit.  "Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Schrecker v. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003).  Here, the declarations sufficiently demonstrate the adequacy of defendants' search and the propriety of their decision to withhold certain material pursuant to specified exemptions.  Plaintiff's conclusory, self-serving, and unsigned declaration submitted by its Chairman and General Counsel is woefully inadequate to create a genuine dispute of fact to support discovery.  *See Carter v. v. George Wash. Univ.*, 180 F. Supp. 2d 97, 111 (D.D.C. 2001) ("self-serving affidavits alone will not protect the non-moving party from summary judgment"), *aff'd*, 387 F.3d 872 (D.C. Cir. 2004); *Lemmons v. George Wash. Univ. Hosp.*, 431 F. Supp. 2d 76, 84 n.9 (D.D.C. 2006) (finding unsigned declaration to be of "questionable evidentiary value").

Plaintiff's argument boils down to the unsupported contention that an adequate search "obviously has not been done," which "raise[s] the presumption that bad faith behavior is at issue, as it has been with . . . other recent scandals." FRCP Rule 56(d) Aff. in Support of Pl.'s Opp'n 3 [Dkt. # 35-1].  This is precisely the type of "conclusory

allegation[] unsupported by factual data [that] will not create a triable issue of fact."
*Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999) (internal
citation and quotation marks omitted).  Indeed, "[t]he sufficiency of the affidavits is not
undermined by a mere allegation of agency misrepresentation or bad faith, nor by past
agency misconduct in other unrelated cases."  *Hayden v. Nat'l Sec. Agency/Cent. Sec.
Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).  Absent any basis for discovery, plaintiff's
request for it must be denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's Motion for Summary
Judgment.  An Order consistent with this decision accompanies this Memorandum
Opinion.

RICHARD J. LEON
United States District Judge